## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
**CAROL ROSENBERG, et al.,**                )
                                             )
    **Plaintiffs,**                         )
                                             )
        **v.**                            )    **Case No. 17-cv-00437 (APM)**
                                             )
**U.S. DEPARTMENT OF DEFENSE,**              )
                                             )
    **Defendant.**                          )
_____ )


## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Plaintiffs Carol Rosenberg, a reporter for the *Miami Herald*, and the Miami Herald Media Company bring this action against Defendant United States Department of Defense ("DOD") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiffs seek disclosure of emails to senior DOD officials sent by retired Marine Corps General John F. Kelly—then Commander of the U.S. Southern Command ("SOUTHCOM")—relating to Joint Task Force Guantánamo ("JTF-GTMO"), a military task force based at the U.S. Naval Station at Guantánamo Bay, Cuba.

After Plaintiffs filed this lawsuit, DOD conducted a search for responsive emails and located 256 email records and 92 attachments, totaling 548 pages. DOD released 548 pages to Plaintiffs, some in full and some with redactions. To justify its redaction and withholding of information from these documents, Defendant invokes FOIA Exemptions 1, 3, 5, 6, and 7(E). In response, Plaintiffs contest Defendant's redactions as unjustified.

Based upon the court's *in camera* inspection of a representative sampling of the records produced to Plaintiffs, and for the reasons described below, the court finds that Defendant properly withheld information under Exemptions 3, 6, and 7(E). However, the court also finds that Defendant has not properly justified withholding other information under Exemptions 1 and 5. Accordingly, the court grants in part and denies in part Defendant's Motion for Summary Judgment and Plaintiffs' Motion for Summary Judgment.

## II.    BACKGROUND

### A.    Statutory Framework

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Because of FOIA's critical role in promoting transparency and accountability, "[a]t all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). FOIA requires that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless the records fall within one of nine narrowly construed exemptions, *see id.* § 552(b); *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Nat'l Sec. Counselors v. CIA*, No. 12-cv-284, 2018 WL 3978093, at *3 (D.D.C. Aug. 20, 2018) (alteration in original) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Moreover, "[e]ven when an exemption applies, the agency is obligated to disclose '[a]ny reasonably segregable portion of a record' after removing

the exempt material and must note the 'amount of information deleted, and the exemption under which the deletion is made.'" *Bartko v. U.S. Dep't of Justice*, 898 F.3d 51, 62 (D.C. Cir. 2018) (second alteration in original) (quoting 5 U.S.C. § 552(b)).

In 2016, President Obama signed into law the FOIA Improvement Act of 2016, which amended the FOIA in various ways. *See* Pub. L. No. 114-185, 130 Stat. 538. As relevant here, the Act codified the "foreseeable harm" standard established in 2009 by then Attorney General Holder for defending agency decisions to withhold information. *See* S. Rep. No. 114-4, at 3 & n.8 (2015) (citing Office of Att'y Gen., *Memorandum for Heads of Executive Departments and Agencies, Subject: Freedom of Information Act* (Mar. 19, 2009)); S. Rep. No. 114-4, at 7–8. Pursuant to the "foreseeable harm" standard, the Department of Justice would "defend an agency's denial of a FOIA request only if (1) the agency reasonably fores[aw] that disclosure would harm an interest protected by one of [FOIA's] statutory exemptions, or (2) disclosure [were] prohibited by law." U.S. Dep't of Justice, *Guide to the Freedom of Information Act* 25 (2009 ed.), https://www.justice.gov/archive/oip/foia_guide09/procedural-requirements.pdf (internal quotation marks omitted). By codifying this standard, Congress sought to establish a "presumption of openness" in FOIA. *See* H.R. Rep. No. 114-391, at 9 (2016); S. Rep. No. 114-4, at 3, 7.

Accordingly, as amended by the FOIA Improvement Act, the statutory text now provides that: "An agency shall . . . withhold information under this section only if [ ] (I) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption described in [5 U.S.C. § 552(b)]; or (II) disclosure is prohibited by law[.]" 5 U.S.C. § 552(a)(8)(A). Stated differently, pursuant to the FOIA Improvement Act, an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably

harm an exemption-protected interest and if its disclosure is not prohibited by law.[1]  The "foreseeable harm" standard—and its applicability to DOD's discretionary redactions—plays a central role in the parties' disputes in this matter.

### B.  Factual Background

Since 2001, Plaintiff Carol Rosenberg has reported extensively on SOUTHCOM—a component of DOD responsible for American military operations in Central America, South America, and the Caribbean—including its operation of the Guantánamo Bay detention center. Compl., ECF No. 1, ¶¶ 7, 10.  Rosenberg's reporting also included coverage of General Kelly during his tenure as Commander of SOUTHCOM from November 2012 to January 2016.  *Id.*

Following the presidential election on November 8, 2016, Rosenberg and the *Miami Herald* published a story reporting that then President-elect Trump had met with General Kelly and was considering him for a national security role in the new administration.  Pls.' Cross-Mot. for Summ. J. & Opp'n to Def.'s Mot. for Summ. J., ECF No. 19 [hereinafter Pls.' Cross-Mot.], Pls.' Statement of Facts, ECF No. 19-2 [hereinafter Pl.'s Stmt.], ¶ 55; Pls.' Cross-Mot., Decl. of John Langford, ECF No. 19-3 [hereinafter Langford Decl.], Ex. I, ECF No. 19-4.  Presuming that General Kelly would soon become a candidate for a national security position in the Trump administration, Rosenberg sent a FOIA request to DOD on November 11, 2016, seeking:

> [A]ll emails by the former Southern Command commander retired Marine Gen. John F. Kelly to Lisa Monaco [the former Assistant to

---

[1] Critically, "[t]he foreseeable harm standard applies only to those FOIA exemptions under which discretionary disclosures can be made."  S. Rep. No. 114-4, at 8.  Information that is prohibited from disclosure or exempt from disclosure by law "is not subject to discretionary disclosure and is therefore not subject to the foreseeable harm standard."  *Id.*; *cf.* U.S. Dep't of Justice, *Guide to the Freedom of Information Act* 686–92 (2009 ed.), https://www.justice.gov/archive/oip/foia_guide09/disclosure-waiver.pdf (explaining that disclosure is prohibited by law when information is covered by FOIA Exemptions 1 or 3, Exemption 4 if the disclosure is prohibited by the Trade Secrets Act, or Exemptions 6 or 7(C) if disclosure is prohibited by the Privacy Act of 1974).

President Obama for Homeland Security and Counterterrorism] or
those that also copied her on his correspondence.

Compl., Ex. A, ECF No. 1-1 [hereinafter FOIA Request]. In the FOIA Request, Rosenberg cited

"the sudden emergence of General Kelly as a potential candidate for a national security job in the

Trump administration" as grounds for expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).

FOIA Request at 1. SOUTHCOM acknowledged receipt of Plaintiffs' FOIA request on November

23, 2016, but denied expedited processing on the basis that "a compelling need [was] not

demonstrated." Compl., Ex. B, ECF No. 1-2. Rosenberg administratively appealed the denial of

expedited processing. Compl., Ex. C, ECF No. 1-3.

During the pendency of the FOIA request, then President-elect Trump selected General

Kelly for the position of Secretary of Homeland Security in early December 2016, Pl.'s Stmt. ¶ 57,

and the U.S. Senate confirmed General Kelly on January 20, 2017, *id.* ¶ 59. After six months as

Secretary of Homeland Security, General Kelly was named Chief of Staff to President Trump on

July 29, 2017. *Id.* ¶ 62.

### C.      Procedural Background

Plaintiffs filed this lawsuit on March 30, 2017, challenging the government's failure to

expedite processing of the FOIA request and its failure to disclose any responsive documents. *See*

*generally* Compl. After DOD responded to Plaintiffs' Complaint on April 27, 2017, *see* Answer,

ECF No. 8, the parties negotiated a schedule for DOD to review, process, and produce records, *see*

*generally* Joint Status Report, ECF No. 11. In a series of rolling productions, DOD produced to

Plaintiffs 256 emails and 92 attachments totaling 548 pages, invoking FOIA Exemptions 1, 3, 5,

6, and 7(E) for various redactions and withholdings across the production. *See* Third Joint Status

Report, ECF No. 15, ¶¶ 3–4; *see also* Def.'s Mot. for Summ. J., ECF No. 18 [hereinafter Def.'s

Mot.], Def.'s Statement of Facts, ECF No. 18-3, ¶¶ 6, 8. The responsive email records consist

primarily of weekly updates sent by General Kelly to Lisa Monaco and other DOD senior officials about operations at JTF-GTMO, and the remainder are other email correspondence sent between DOD senior officials about General Kelly's weekly reports. The attachments are primarily routine weekly updates on JTF-GTMO sent by General Kelly to DOD senior officials.

After production, DOD moved for summary judgment. *See* Def.'s Mot. The motion was supported by the declaration of Brigadier General Todd J. McCubbin, the Reserve Deputy Director of SOUTHCOM, *see* Def.'s Mot., Decl. of Todd J. McCubbin, ECF No. 18-2 [hereinafter McCubbin Decl.], as well as a *Vaughn* Index, *see id.*, Ex. 4 [hereinafter *Vaughn* Index]. McCubbin's declaration explained the scope of the search conducted in response to Plaintiffs' FOIA request and the reasons for DOD's assertion of various FOIA exemptions to redact the records. *See generally* McCubbin Decl. In further support of its motion for summary judgment, DOD later submitted the declaration of Michael Droz, the Deputy Director of Operations of SOUTHCOM. *See* Def.'s Reply in Supp. of Summ. J. & Mem. of P. & A. in Opp'n to Pls.' Cross-Mot., ECF No. 22 [hereinafter Def.'s Reply], Second Decl. of Michael Droz, ECF No. 22-1 [hereinafter Droz Decl.]. Droz's declaration further elaborated on DOD's withholding of information from three records pursuant to Exemption 5. *See id.*

Plaintiffs opposed DOD's motion, and filed a cross-motion for summary judgment, asserting that no proper basis exists for most of the government's redactions and withholdings. Pls.' Cross-Mot., Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. & in Supp. of Pls.' Cross-Mot. for Summ. J., ECF No. 19-1 [hereinafter Pls.' Mem.], at 1. Plaintiffs also asked the court to conduct an *in camera* review of a representative sample of the documents at issue, *see* Pls.' Mem.

at 42–43; Pls.' Reply in Further Supp. of Pls.' Cross-Mot., ECF No. 24 [hereinafter Pls.' Reply], at 23–25, which this court agreed to do.[2]

The parties' motions are now ripe for disposition.

## III. STANDARD OF REVIEW

Most FOIA cases are appropriately resolved on motions for summary judgment. *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if a reasonable fact-finder could find for the nonmoving party, and a fact is "material" only if it is capable of affecting the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). As a general matter, "[i]n FOIA cases, an agency defendant may be entitled to summary judgment if it can demonstrate that (1) no material facts are in dispute, (2) it has conducted an adequate search for responsive records, and (3) each responsive record that it has located has either been produced to the plaintiff, is unidentifiable, or is wholly exempt from disclosure." *Mattachine Soc'y of Wash., D.C. v. U.S. Dep't of Justice*, 267 F. Supp. 3d 218, 223 (D.D.C. 2017) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350–51 (D.C. Cir. 1983)).

---

[2] Specifically, the court reviewed *in camera* Records 31, 72, 129, 140, 168, 240, 248, 265, 278, 281, 288, 295, 297, 307, 317, 320, 321, 326, 328, 331, and 335. *See* Minute Order, Aug. 22, 2018; Def.'s Notice of Lodging of Classified Documents for Ex Parte, In Camera Review, ECF No. 26.

Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted). The agency's affidavits or declarations must "describe the documents and the justifications for nondisclosure with reasonably specific detail" and "demonstrate that the information withheld logically falls within the claimed exemption." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Further, they must not be "controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Id.*; *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 182 (D.D.C. 2011) (quoting *Military Audit Project*, 656 F.2d at 738). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (internal quotation marks omitted).

## IV. DISCUSSION

Defendant invokes FOIA Exemptions 1, 3, 5, 6, and 7(E) to justify its various redactions and withholdings. Plaintiffs challenge the applicability of all exemptions, save Exemption 3.[3] The court addresses the parties' disputes below, starting with Exemption 5.

---

[3] Other issues have been conceded by Plaintiffs. First, Plaintiffs' claim that DOD improperly denied expedited processing of their FOIA request is now moot, as DOD completed its processing of Plaintiffs' request. *See* 5 U.S.C. § 552(A)(6)(E)(iv) ("A district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request."). Second, Plaintiffs do not challenge the adequacy of the search conducted by DOD. *See generally* Pls.' Cross-Mot.; Pls.' Reply. Thus, the only issue left for the court to resolve is the propriety of DOD's withholdings under the aforementioned FOIA Exemptions.

## A.        Exemption 5

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  The exemption protects information that would be "normally privileged in the civil discovery context."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  "Exemption 5 incorporates the privileges that the Government may claim when litigating against a private party, including the governmental attorney-client and attorney work product privileges, the presidential communications privilege, the state secrets privilege, and the deliberative process privilege." *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015).

Here, DOD asserts the deliberative process privilege to withhold information from a number of the responsive email records and attachments.[4]  *See generally Vaughn* Index; McCubbin Decl. ¶ 41 (stating that the information withheld contains "General Kelly's opinions, advice, and recommendations to [DOD] senior officials about developments at JTF-GTMO and deliberative discussions about policy issues and potential actions related to detention operations").  The deliberative process privilege allows an agency to withhold responsive records if the documents "reflect[] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Sears*, 421 U.S. at 150 (internal quotation marks omitted).  The privilege "rests most fundamentally on the belief that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the

---

[4] Specifically, DOD withheld information from the following email records and attachments: Records 1, 3–4, 22–24, 29, 31, 45–46, 50, 58, 60, 62, 64–66, 72, 75, 83, 85, 99, 105, 129–31, 136, 140, 143–45, 148–49, 160, 186, 189, 195, 199–201, 211, 216, 219, 226, 232–33, 248, 250–55, 258, 260, 262–88, 290–97, 299, 301, 303–05, 307, 310–14, 317–21, 324, 326–28, 331–41, 343, and 346–47.  *See* McCubbin Decl. ¶ 42; *Vaughn* Index at 17–22.

quality of administrative decisions would necessarily suffer." *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1070 (D.C. Cir. 1993) (internal quotation marks omitted).

To invoke the privilege, an agency must show that the withheld information is both "predecisional" and "deliberative." *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017). "Documents are 'predecisional' if they are 'generated before the adoption of an agency policy.'" *Id.* (quoting *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010)). "[A] document is deliberative if it is 'a part of the agency give-and-take—of the deliberative process—by which the decision itself is made.'" *Abtew*, 808 F.3d at 899 (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)).

Plaintiffs challenge all of DOD's Exemption 5 withholdings as improper. Pls.' Mem. at 11. Plaintiffs assert as a general matter that DOD has not met its burden under the FOIA Improvement Act to show that reasonably foreseeable harm to an exemption-protected interest—here, the agency's deliberative process—would result from the release of the withheld material. *See* 5 U.S.C. § 552(a)(8)(A)(i)(I). Plaintiffs also contend that DOD has failed to identify the specific deliberative processes to which certain of its withholdings relate. The court addresses each issue in turn.

### 1.    *Satisfaction of the FOIA Improvement Act's "Foreseeable Harm" Standard*

Plaintiffs' primary challenge to DOD's Exemption 5 withholdings relates to the FOIA Improvement Act's codification of the "foreseeable harm" standard. *See* 5 U.S.C. § 552(a)(8)(A). According to Plaintiffs, the FOIA Improvement Act requires agencies to make a specific showing that disclosure of *each* of its Exemption 5 withholdings would reasonably and foreseeably harm "'the quality of agency decisions' by inhibiting 'open and frank discussions among those who make them within the Government.'" *See* Pls.' Reply at 3 (quoting *Dep't of Interior v. Klamath*

*Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001)); *see also* Pls.' Mem. at 11, 13. Pursuant to Plaintiffs' interpretation of the government's burden under the "foreseeable harm" standard, McCubbin's general assertion that disclosure of any of the information withheld under Exemption 5 "would jeopardize the free exchange of information between senior leaders within and outside of [DOD]," McCubbin Decl. ¶ 62, is "plainly insufficient," *see* Pls.' Mem. at 11. In response, DOD asserts that Plaintiffs make too much of the FOIA Improvement Act's impact on the government's burden to justify a discretionary withholding under FOIA. Def.'s Reply at 17–18. According to DOD, the Act does not require an agency to go through the superfluous exercise of showing how *each* disclosure would harm its deliberative process, especially where, as here, the agency's declaration explains that disclosing any of General Kelly's "routine[] consult[ations] with senior D[O]D and White House officials . . . about ongoing operational issues at JTF-GTMO" would impede open discussion on these issues. *See id.* at 20 (first and second alterations in original) (quoting McCubbin Decl. ¶ 41).

The parties' dispute requires the court to determine what an agency must show to satisfy the FOIA Improvement Act's "foreseeable harm" standard for discretionary withholdings. Although two years have elapsed since the Act's passage in 2016, surprisingly little authority— precedential or persuasive—on this issue exists.[5] The court's search yielded only eight federal court cases that even mention the FOIA Improvement Act. Of these, only two cases—*Edelman v. SEC*, 239 F. Supp. 3d 45 (D.D.C. 2017), and *Ecological Rights Found. v. FEMA*, No. 16-cv-05254, 2017 WL 5972702 (N.D. Cal. Nov. 30, 2017)—discuss the newly-codified "foreseeable harm"

---

[5] Notably, the Department of Justice's Office of Information Policy has not yet updated its current Guide to the Freedom of Information Act to reflect the "substantive and procedural amendments" contained in the FOIA Improvement Act of 2016. *See* U.S. Dep't of Justice, *Guide to the Freedom of Information Act*, https://www.justice.gov/oip/doj-guide-freedom-information-act-0; *see also* U.S. Dep't of Justice, *OIP Summary of the FOIA Improvement Act of 2016*, https://www.justice.gov/oip/oip-summary-foia-improvement-act-2016.

standard, and only *Ecological Rights Foundation* can be said to address the standard substantively.[6]

In *Ecological Rights Foundation*, the court granted summary judgment in favor of a FOIA requester seeking disclosure of records protected under the deliberative process privilege. 2017 WL 5972702, at *7. Finding that the agency had failed to justify its invocation of the privilege, the court noted that the agency "fail[ed] to explain how disclosure would expose [the agency's] decision-making process so as to discourage candid discussion" and likewise "d[id] not provide any justification for how the agency would be harmed by disclosure as required by the FOIA Improvement Act of 2016[,] 5 U.S.C. § 552(a)(8)(A)(i)." *Id.* at *6. The court concluded that "[a]bsent a showing of foreseeable harm to an interest protected by the deliberative process exemption, the documents must be disclosed." *Id.*

The court's insistence on strict compliance with the FOIA Improvement Act in *Ecological Rights Foundation*, coupled with the text of the Act itself, provides guidance as to what DOD must show here to justify its Exemption 5 withholdings. To satisfy the "foreseeable harm" standard, DOD must explain how a particular Exemption 5 withholding would harm the agency's deliberative process. DOD may take a categorical approach—that is, group together like records—but in that case, it must explain the foreseeable harm of disclosure for each category. *Cf. Climate Investigations Ctr. v. U.S. Dep't of Energy*, No. 16-cv-00124, 2018 WL 4500884, at *13 (D.D.C.

---

[6] In *Edelman*, the court only briefly addressed the FOIA requester's assertion that the SEC failed to conduct the "foreseeable harm analysis" required by the FOIA Improvement Act of 2016 to support its Exemption 5 withholdings, before noting that the Act itself "ha[d] no bearing on the Court's analysis" because the FOIA request was made in January 2014, two years before the FOIA Improvement Act—and its "foreseeable harm" standard—went into effect. *See* 239 F. Supp. 3d at 54 n.5.

Sept. 19, 2018). Defendant has failed to do so here, and the court therefore lacks sufficient information to determine whether the redacted material has been properly withheld.

The court is unmoved by Defendant's argument that a more specific foreseeable-harm analysis would be duplicative. DOD submits that because the responsive records "are of the same type," disclosing the information withheld from the records "would yield the same kinds of harms," consistently "across the release." Def.'s Reply at 21. In DOD's view, this general explanation is all that is required, "particularly where the nature of these documents is explained in detail." *Id.* To be sure, the agency's declaration provides sufficiently detailed descriptions of the nature and substance of the withheld communications about JTF-GTMO operations between General Kelly and senior DOD officials. *See generally* McCubbin Decl. Indeed, the declaration provides that these communications run the gamut from discussions about "the performance of personnel"; "housing and recreational opportunities" for detainees; "operational changes related to noncompliant detainee behavior, including guard responses"; "operational changes related to facilities issues"; "possible changes to procedures for detainee communications"; general processes for "decision-making at JTF-GTMO"; "staffing issues"; "security protocols"; and "operational issues related to a possible new detention operation in the continental United States," to "appropriate next steps related to detainees' mental, physical, and emotional health"; "detainee movements"; and "media coverage." McCubbin Decl. ¶¶ 43–62.

But pointing out the breadth and variety of these categories of deliberative discussions only serves to undermine Defendant's argument that it has satisfied its statutory obligation. *Cf. Prison Legal News v. Samuels*, 787 F.3d 1142, 1149–50 (D.C. Cir. 2015) (explaining that while an agency "may justify its withholdings and redactions category-of-document by category-of-document, . . . [t]he range of circumstances included in the category must *characteristically*

support an inference that the statutory requirements for [the] exemption are satisfied" (emphasis added) (internal quotation marks omitted)).  The court can readily see, for example, that disclosure of the internal deliberations between General Kelly and high-ranking DOD officials about "a possible new detention operation in the continental United States" could result in reasonably foreseeable harm to future "honest and frank communication within the agency."  *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  But, absent more detail from the agency, the court can less readily agree with the notion that disclosure of other, seemingly more benign, categories of withheld deliberative information—e.g., General Kelly's "opinions about the current state of facilities on base and recommendations and advice about maintenance issues," McCubbin Decl. ¶ 52—would reasonably result in the same level of harm to the exemption-protected interest.

To be clear, the court does not read the statutory "foreseeable harm" requirement to go so far as to require the government to identify harm likely to result from disclosure of *each* of its Exemption 5 withholdings.  A categorical approach will do.  But the court agrees with Plaintiffs that the government must do more than perfunctorily state that disclosure of all the withheld information—regardless of category or substance—"would jeopardize the free exchange of information between senior leaders within and outside of the [DOD]," *id.* ¶ 62.  *See* Pl.'s Mem. at 11.

Because Defendant has failed to satisfactorily show that the categories of information withheld under Exemption 5 would result in reasonably foreseeable harm to its deliberative process, the court denies Defendant's motion as to this exemption.  In lieu of granting summary judgment in favor of Plaintiffs on this issue, however, the court will allow Defendant to supplement

its declaration on remand to satisfy the "foreseeable harm" standard for its discretionary withholdings.

As the agency will have another opportunity to supplement its declarations as to Exemption 5, the court need not fulsomely address Plaintiffs' other foreseeable harm arguments—namely, those charging that DOD can assert no harm from disclosure of discussions that: (1) conceal impermissible animus or embarrassing comments; (2) involve only mundane, minor, and uncontroversial decisions; and (3) relate to decisions that have already been made.  *See* Pls.' Mem. at 13–17.  DOD may choose to address the substance of these arguments in its supplemental declaration.  Having reviewed some of the disputed withholdings *in camera*, the court will, however, make findings as to two categories of records, as follows.

### a.  Information Involving Facially Illegitimate Deliberations

Based upon the court's *in camera* review, the court rejects Plaintiffs' argument that DOD impermissibly withheld information in Records 72 and 320 in order to conceal animus toward detainees at JTF-GTMO, government misconduct, or embarrassing comments.  *See* Pls.' Mem. at 13–15.

### b.  Information Involving "Mundane" Agency Decisions

Based upon the court's *in camera* review, the court rejects Plaintiffs' argument that DOD impermissibly withheld information so minor and uncontroversial as to evade the protection of Exemption 5 in Records 31, 129, 140, 295, and 320.  *See* Pls.' Mem. at 15–16.  The information redacted from these records is not the type of "mundane material" the disclosure of which "is unlikely to diminish officials' candor or otherwise injure the quality of agency decisions." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1436 & n.8 (D.C. Cir. 1992); *see also id.* at 1436 (holding that "materials that do not embody agency judgments," including

"materials relating to standard or routine computations or measurements over which the agency has no significant discretion," are not entitled to protection under Exemption 5).

2.    *Whether Specific Withholdings Are "Predecisional" and "Deliberative"*

Plaintiffs' next challenge to the Exemption 5 withholdings asserts that the government has failed to identify the specific, predecisional deliberative process to which certain of the withholdings relate. *See* Pls.' Mem. at 18. To support their assertion, Plaintiffs point to several of the records, asserting that the agency's description of the withholdings are inadequate to justify Exemption 5 protection. *See id.* at 19–20.

Of Plaintiffs' challenges in this vein, the court's *in camera* review substantiated only one: the assertion that General Kelly's opinions about the merits of a judicial ruling are not properly withheld as predecisional deliberative process. *See id.* at 20. The agency withheld such information from Records 262, 263, 268, 271, 272, 275, 277, 278, 279, 280, 281, 283, 286, 291, 294, 295, 297, 301, 303, 305, 310, 311, 313, 318, 319, 320, 321, 335, and 346, pursuant to Exemption 5, asserting that in these records, "General Kelly provides his opinions about" a military commission ruling barring female guards from touching certain detainees, "advises senior officials about the consequences of this ruling for the guard force," and "provides recommendations about how the government should proceed under the order and opinions about how the government should handle the equal opportunity complaint." *See* McCubbin Decl. ¶ 54. Having reviewed *in camera* Records 278, 281, 295, 320, 321, and 335, the court agrees with Plaintiffs that some of the withheld information involves General Kelly merely "opining about the merits" of the military commission ruling in a manner that is not directed toward decision-making as to law or policy, and that such material is not subject to the deliberative process privilege. In reviewing these documents, the court noted DOD's inconsistent redactions across these records.

For example, in Record 320, the government left unredacted General Kelly's opinion that the slow

progress of the military commission in addressing the ruling barring female guards from touching

certain detainees rivaled the lengthy deliberations required to reach the "complicated" "Dred Scott

decision." *See* Pls.' Cross-Mot., Ex. PP-2, ECF No. 19-6, at Bates 454. Yet, the government opted

to redact similar instances of General Kelly's personal opinions from other Records. *See, e.g.*, *id.*

at Bates 327–28, 380–83, 456–59 (Records 278, 295, and 321).[7] In light of the sensitivity of these

records, the court will give the government a subsequent opportunity to explain why the records

fall within Exemption 5's ambit in its supplemental declaration.

In light of the foregoing, the court denies Defendant summary judgment as to its Exemption

5 withholdings.

## B.   Exemption 1

FOIA Exemption 1 precludes disclosure of documents that are:

> (A) specifically authorized under criteria established by an
> Executive order to be kept secret in the interest of national defense
> or foreign policy and (B) are in fact properly classified pursuant to
> such Executive order[.]

5 U.S.C. § 552(b)(1). Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) ("EO 13,526"),

is the basis for the government's redaction of 196 of the records produced to Plaintiffs. *See* Def.'s

Mot., Mem. of P. & A. in Supp., ECF No. 18-1 [hereinafter Def.'s Mem.], at 11 (citing *Vaughn*

Index); *see also* McCubbin Decl. ¶¶ 16, 18, 35–37. EO 13,526 provides that information may be

classified if four conditions are satisfied: (1) an original classification authority must classify the

information; (2) the information must be "owned by, produced by or for, or . . . under the control

of the United States Government"; (3) the information must fall within one of eight categories

---

[7] The court is satisfied that the information pertaining to the military commission ruling withheld from Records 281, 320, and 335, *see id.* at Bates 336–38, 452–55, 503–06, were properly redacted pursuant to the deliberative process privilege.

specified in section 1.4 of EO 13,526; and (4) the original classification authority must determine that the unauthorized disclosure of the information "reasonably could be expected to result in damage to the national security, . . . and the original classification authority is able to identify or describe the damage." EO 13,526 § 1.1(a). As relevant here, information is properly classified at the "Secret" level, *see* McCubbin Decl. ¶ 16, if unauthorized disclosure "reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe," EO 13,526 § 1.2(a)(2).

Defendant withheld four categories of classified information pursuant to FOIA Exemption 1, asserting that the information is protected by EO 13,526 because it "pertains to": (1) "military plans, weapon systems, or operations"; (2) "foreign government information"; (3) "intelligence activities (including covert action), intelligence sources or methods, or cryptology"; and (4) "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security." EO 13,526 § 1.4(a), (b), (c), (g); *see* McCubbin Decl. ¶ 16.

Plaintiffs challenge the government's withholdings under Exemption 1, asserting that the government failed to establish that disclosure of the information withheld pursuant to sections 1.4(a), (b), and (c) would reasonably be expected to damage the national security. Plaintiffs do not contest the other threshold requirements of EO 13,526. The court addresses each category of classified information in the order listed above.[8]

---

[8] The court readily dismisses Plaintiffs' unsupported assertion that the government has improperly withheld information under Exemption 1 to conceal information that would be embarrassing to government officials. *See* Pls.' Mem. at 22 (identifying Records 265 and 320). The court has reviewed *in camera* Records 265 and 320 and finds no indication of impropriety or government attempts to wrongfully conceal information in these Records.

*1.      Section 1.4(a): Military plans, weapon systems, or operations*

According to the agency, the bulk of DOD's withholdings under Exemption 1 "concern[]

military operations" and are therefore protected under section 1.4(a) of EO 13,526.  McCubbin

Decl. ¶ 18.  The agency's declaration explains that the information withheld from the email records

and attachments "address a range of operational details covered by Section 1.4(a)."  *Id.* ¶ 19.

Because the responsive emails and attachments comprise routine updates sent by General Kelly to

DOD senior officials, General Kelly often addressed the same subject matter in his emails—

usually, "Camps, Behavioral Health Unit/Detainee Hospital, Facilities, Detainee Movement

Orders (DMO), Upcoming Events, and Final Comments"—and provided updates to senior

officials on any developments to these categories.  *Id.*  In their briefing, the parties identified the

disputed categories of operational information covered by DOD's section 1.4(a) withholdings.  *See*

Def.'s Mem. at 13–21; Pls.' Mem. at 23–31; Pls.' Reply at 4–13.  The court addresses the

applicability of section 1.4(a) to each of these categories below.

a.      <u>Detainee Conduct</u>

DOD withheld information about detainees and detention operations at JTF-GTMO, which

consists of General Kelly's descriptions of detainee conduct, including discussions "identif[ying]

noncompliant detainees," explaining "measures being taken to maintain order while ensuring the

detainees' health, safety, and wellbeing," and highlighting "the interpersonal relationships

between compliant and noncompliant detainees and the effect it has on detention operations." *See*

McCubbin Decl. ¶ 20.  According to the agency, "release of this information could damage

national security by further complicating detainee operations."  *Id.*  In Defendant's view, a future

detainee of JTF-GTMO could use this information to "shape their behavior to be maximally

disruptive" while detained, and, similarly, current detainees could get hold of the information and

"frustrate the mission and operation at JFT-GTMO," thereby "putting the guard force and the security of the facility at risk." *Id.*

Plaintiffs do not challenge the obvious conclusion that this category of information "pertains" to a "military operation." *See* Pls.' Reply at 10–11. Rather, Plaintiffs assert that the type of harm the government believes likely to occur upon disclosure—"mak[ing] administration of JTF-GTMO significantly more difficult and plac[ing] military personnel at unnecessary risk," McCubbin Decl. ¶ 20—does not constitute a risk of harm to national security. *See* Pls.' Reply at 11. Plaintiffs characterize this risk as one involving law enforcement concerns, rather than concerns to the national security. *Id.*

The court declines Plaintiffs' invitation to second guess the government's judgment that releasing information about detainee conduct within JTF-GTMO would imperil the national security. The D.C. Circuit has continually "reaffirm[ed] [the] deferential posture" a court must assume "in FOIA cases regarding the 'uniquely executive purview' of national security." *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (quoting *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926–27 (D.C. Cir. 2003)). The Circuit has cautioned against "undertak[ing] searching judicial review" when it comes to evaluating an agency's withholding of classified information, because "the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [e]ffects . . . might occur as a result of a particular classified record." *Id.* at 864–65 (internal quotation marks omitted). As such, to properly invoke Exemption 1, "little proof or explanation is required [from the agency] beyond a plausible assertion that information is properly classified." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007). While "vague, conclusory affidavits, or those that merely paraphrase the words of a statute" will not pass muster, *id.* (quoting *Church of Scientology of Cal., Inc. v. Turner*, 662

F.2d 784, 787 (D.C. Cir. 1980) (per curiam)), the agency's affidavit in this case does not suffer from those deficiencies. Instead, the agency "logical[ly]" and "plausibl[y]," *see Larson*, 565 F.3d at 862 (internal quotation marks omitted), connects disclosure of the withheld information—sensitive information pertaining to enemy combatant detainees and behavioral tolerances at JTF-GTMO—to the risk of interference with the safe administration of JTF-GTMO. The agency's declaration therefore "offer[s] the 'little proof or explanation' necessary to show that, if released," the withheld information "'reasonably could be expected to result in damage to the national security.'" *See Int'l Counsel Bureau v. U.S. Dep't of Def.*, 723 F. Supp. 2d 54, 63 (D.D.C. 2010) (citation omitted) (first quoting *Morley*, 508 F.3d at 1124; then quoting *Larson*, 565 F.3d at 865).

### b.    Detainee Health

DOD withheld information relating to detainee health and hunger strikes, wherein General Kelly "discuss[es] in broad and specific terms detainees' mental, physical, and emotional health, as well as the measures . . . being developed or taken to ensure their wellbeing," McCubbin Decl. ¶ 23, and identifies "the number of hunger strikers" and "the impact . . . the strike is having on detainees' health," *id.* ¶ 26. According to the agency, "releasing information about the health and medical status of detainees would create a severe risk of damage to national security by yielding information that can be used as propaganda by terrorist organizations and other adversaries." *Id.* ¶ 24. Moreover, the agency explains that "[b]ecause some detainees have engaged in hunger strikes and other noncompliant behavior that lead to medical concerns over their health and wellbeing, release of this information would enable adversaries that seek to inflame public reaction to detention operations at JTF-GTMO, putting U.S. military forces and allies at risk." *Id.*

For their part, Plaintiffs contend that the agency's withholding of detainee health and hunger strike information is unjustified because: (1) much of the withheld detainee health

information—facts about detainee height and weight, the numbers of hunger strikers, as well as details and first-hand accounts of the enteral feeding program—has previously been disclosed and therefore cannot now be withheld, and (2) the disclosure of similar information undermines the government's claim that disclosure would cause serious damage to the national security. *See* Pls.' Mem. at 26–28.

### i. Official Acknowledgement

The court turns first to address Plaintiffs' assertion that the detainee health and enteral feeding program information redacted by DOD cannot be protected by Exemption 1 because the government already has publicly disclosed such information. The court disagrees. Plaintiffs fail to show that any of the information identified has been disclosed in a manner that allows them to overcome the agency's invocation of Exemption 1.

Information is "officially acknowledged" and must be disclosed over government objection if: "(1) the information requested [is] as specific as the information previously released; (2) the information requested . . . match[es] the information previously disclosed; and (3) the information requested . . . already ha[s] been made public through an official and documented disclosure." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 620–21 (D.C. Cir. 2011). "These criteria are important because they acknowledge the fact that in the arena of intelligence and foreign relations there can be a critical difference between official and unofficial disclosures." *Shaffer v. Def. Intelligence Agency*, 102 F. Supp. 3d 1, 9 (D.D.C. 2015). Consequently, "[p]rior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure. This insistence on exactitude recognizes the Government's vital interest in information relating to national security and foreign affairs." *ACLU*, 628 F.3d at 621 (alteration in original) (quoting *Wolf v. CIA*, 473 F.3d 370, 378

(D.C. Cir. 2007)). A plaintiff asserting a claim of official acknowledgement bears the "initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Wolf*, 473 F.3d at 378 (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)).

Plaintiffs have failed to shoulder their burden of pointing to "specific information" that has been officially disclosed and "matches" the withheld information. Plaintiffs identify various sources of information that they assert are "official disclosures" of the information they seek here: (1) prior disclosure of detainees' height and weight information from 2002 through 2006, *see* Pls.' Stmt. ¶ 40; Langford Decl., Exs. JJ, KK, ECF No. 19-4; (2) figures on the *Miami Herald* webpage tallying the number of hunger strikers and instances of force-feeding conducted at JTF-GTMO, Pls.' Mem. at 26 (citing Pls.' Stmt. ¶ 41); *see* Langford Decl., Ex. X, ECF No. 19-4; (3) a *Miami Herald* article in which Navy Rear Admiral Kyle Cozad explains that daily figures of hunger strikers and the number of prisoners designated for enteral feedings are not "operationally or medically relevant," Pls.' Mem. at 26–27 (citing Pls.' Stmt. ¶ 39); Langford Decl., Ex. Y, ECF No. 19-4; (4) a detainee's published accounts of his own force-feeding, Pls.' Mem. at 27 (citing Pls.' Stmt. ¶ 44); *see* Langford Decl., Ex. AA, ECF No. 19-4; and (5) a *New York Times* article in which then SOUTHCOM commander, General Craddock, discloses the use of "restraint chairs" to force-feed Guantánamo detainees, Pls.' Mem. at 27 (citing Pls.' Stmt. ¶ 34); Langford Decl., Ex. Z, ECF No. 19-4. Having reviewed these sources, the court concludes that none of the information matches the withheld information.[9]

Rather than demonstrate that the "information requested" is "as specific as the information previously released," *ACLU*, 682 F.3d at 620, Plaintiffs have merely identified facts relating to

---

[9] One caveat: according to Plaintiffs, the *Miami Herald* tally of hunger strikers and force-fed detainees "documents the routine official acknowledgment of the number of hunger strikers." Pls.' Reply at 14. For example, Plaintiffs

hunger strikes and enteral feeding from a variety of sources—some "official" but most not—"in the hopes that such information collectively is 'as specific as' and 'matches' the information that has been withheld." *ACLU v. CIA*, 109 F. Supp. 3d 220, 241 (D.D.C. 2015), *aff'd sub. nom. ACLU v. U.S. Dep't of Justice*, 640 F. App'x 9 (D.C. Cir. 2016). But Plaintiffs' approach is unavailing. To begin with, the government-issued charts detailing the height and weight of specific detainees between the years 2002 and 2006 pertain to a time period outside of the scope of the responsive records, and therefore cannot "match" any of the information withheld by DOD. *Compare* Langford Decl., Exs. JJ, KK (height and weight information recorded from 2002 through 2006), *with Vaughn* Index (responsive records from 2013 through 2016). Additionally, Plaintiffs have not shown that General Craddock's official acknowledgement of the use of "restraint chairs" to impose enteral feeding, nor the first-hand account of a JTF-GTMO detainee describing force-feeding, "officially acknowledge" the specific, redacted details withheld by DOD here. The mere existence of some public information about the enteral feeding program does not suffice to overcome DOD's invocation of Exemption 1 to protect the specific withheld information. *Cf. Azmy v. U.S. Dep't of Def.*, 562 F. Supp. 2d 590, 598–99 (S.D.N.Y. 2008) ("[T]he application of Exemption 1 is generally unaffected by whether the information has entered the realm of public knowledge. A limited exception is permitted only where the government has officially disclosed

---

explain that the May 15, 2013 tally of 100 hunger strikers and 30 tube-fed detainees was derived from the public statement of Army Lt. Col. Samuel House, the JTF-GTMO spokesman. *See id.* (citing Carol Rosenberg, *Guantánamo: 30 of 100 Hunger Strikers Now Being Tube-Fed*, Miami Herald (May 15, 2013), https://www.miamiherald.com/news/nation-world/world/americas/guantanamo/article1951559 html). The figures for this date are thus "officially acknowledged" such that DOD may not withhold the number of hunger strikers and force-fed detainees for the date of May 15, 2013.

However, with regard to the other figures reported on the *Miami Herald* website, which range from March 4, 2013 to December 2, 2013, *see id.* (citing Carol Rosenberg & Lazaro Gamio, *Tracking the Hunger Strike*, Miami Herald, http://media miamiherald.com/static/media/projects/gitmo_chart/ (last visited Dec. 3, 2017)), Plaintiffs have failed to bring to the court's attention the specific official disclosures that support each count in the tally. Accordingly, Plaintiffs have not met their burden to prove that these figures are "official disclosures" that overcome DOD's invocation of Exemption 1.

the specific information the requester seeks." (alteration in original) (quoting *Halpern v. FBI,* 181 F.3d 279, 294 (2d Cir. 1999))). Here, Plaintiffs merely point to alleged disclosures of "vaguely similar information" but fail to identify officially disclosed information that "precisely tracks or duplicates the information it has requested." *See ACLU*, 109 F. Supp. 3d at 241 (cleaned up). In short, Plaintiffs have not met their burden to show that the withheld information has been officially acknowledged.

### ii. Harm to the National Security

The court easily rejects Plaintiffs' related assertion that the release of similar information to that withheld here somehow lessens the risk of harm to the national security resulting from disclosure of information relating to detainee health and the controversial enteral feeding program. "[T]he fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations." *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990). As the agency avers, "releasing sensitive deliberative materials related to hunger strikes would create a powerful propaganda tool for hostile parties seeking to recruit and inflame forces against the United States military and personnel abroad." McCubbin Decl. ¶ 26. This statement readily satisfies the standard for a plausible and logical explanation for classification and is therefore sufficient to invoke Exemption 1.

### c. Detainee Movements to Third Countries

DOD withheld information relating to detainee movement to third countries, including General Kelly's discussions as to "whether a detainee movement is authorized," "the measures that need to be taken to execute the mission," "the logistical requirements necessary to conduct the mission," "the required approval and coordination with the receiving nation," "the reactions of the detainees upon learning of their transfer," as well as "information regarding the receiving nation,"

including "when and how the transfer will occur" and "details regarding preliminary discussions with the receiving nation." *Id.* ¶ 27. According to the agency, releasing information about detainee movements "create[s] significant national security risks by publicizing sensitive operational details about how these orders are executed, including the logistical details that could enable interference in future or similar operations." *Id.* ¶ 28. Moreover, because the information concerns the U.S. government's cooperation with foreign governments to move detainees, releasing that information "would have a significant detrimental effect on the government's ability to continue cooperating with foreign governments in these operations." *Id.*

Plaintiffs' challenge to these withholdings is limited to the government's withholding of information detailing the "reactions of the detainees upon learning of their transfer." *See* Pls.' Mem. at 28–29. Plaintiffs argue that the release of such information "do[es] not implicate governmental operations, logistics, procedures, or the United States' relationship with foreign governments." *Id.* at 29. The court agrees with Plaintiffs—the connection between releasing information about the "reactions of detainees" upon learning of their movements from JTF-GTMO and a risk of "enabl[ing] interference in future or similar" detainee movements is tenuous at best. Information about a detainee's feelings or thoughts about his impending transfer would not seem to pose the same security risk as, say, information regarding how or when the detainees are being transferred, or the name of the receiving nation. If, as DOD appears to assert, *see* Def.'s Reply at 11, the redacted information about the reactions of detainees is too intertwined with other withheld information—the identity of the receiving nation or questions of timing, for example—then DOD may assert as much in a supplemental declaration. On the present record, however, the court cannot discern, even affording due deference to the agency on national security matters as required,

a logical connection between the disclosure of detainees' reactions to transfer orders and a risk to the national security.

Plaintiffs additionally assert that the government has officially acknowledged and disclosed the country of destination for detainee transfers and must therefore disclose this information. *See* Pls.' Mem. at 29 (citing Pls.' Stmt. ¶¶ 48–49); *see also* Langford Decl., Exs. DD, EE, FF, GG, HH, ECF No. 19-4. In the sources identified by Plaintiffs, DOD announced the transfer of three detainees to the United Arab Emirates in January 2017, *see* Langford Decl., Ex. DD, ten detainees to Oman in January 2017, *see id.*, Ex. EE, six detainees to Uruguay in December 2014, *see id.*, Ex. FF, six detainees to Palau in October 2009, *see id.*, Ex. GG, and five detainees to Kuwait in November 2005, *see id.*, Ex. HH. In their reply brief, Plaintiffs also note that a search of the U.S. Department of Defense news release webpage resulted in 13 detainee transfer announcements between November 5, 2014, and January 8, 2016. *See* Pls.' Reply at 16.

Although this information constitutes official disclosures of the names of detainees and the country of destination for their transfers, the only specific "match" to the withheld information that Plaintiffs bring to the court's attention is the agency's withholding from Record 207, which redacts information from a June 13, 2015 email describing a transfer to Oman. *See* Pls.' Cross-Mot., Ex. PP-2, ECF No. 19-6 [hereinafter Production Pt. 1], at Bates 214. As Plaintiffs point out, DOD announced on June 13, 2015, the names of six detainees transferred to Oman. *See* Pls.' Reply at 16 (citing *Detainee Transfer Announced*, U.S. Dep't of Def. (June 13, 2015), https://dod.defense.gov/News/News-Releases/News-Release-View/Article/605565/detainee-transfer-announced/). Plainly, the government cannot withhold this information from Record 207 because it has been officially disclosed. With regard to the other disclosures, Plaintiffs have not

met their burden of providing the court with the "match" in the withheld information to the information already officially acknowledged.

d.     Order Affecting Female Guards

Some of the information withheld by Defendant pursuant to Exemption 1 contains "discussions of an order affecting female guards and a subsequent equal opportunity complaint." McCubbin Decl. ¶ 33.  According to the agency, DOD withheld information in General Kelly's comments about this issue "describing guard force composition, guard actions related to detainees, and the use of classified information in related proceedings."  *Id.*

Plaintiffs assert that DOD has not identified any harm that might result from the disclosure of this withheld information.  Pls.' Mem. at 30; Pls.' Reply at 17.  But, the agency has satisfactorily shown that disclosure of this information—particularly as it reveals information about the composition of the guard force and interactions between guards and detainees—reasonably could be expected to "provide those who seek to harm the United States with critical information regarding our operations, our policies—and how they change dependent on certain factors—and our vulnerabilities."  McCubbin Decl. ¶ 34.  Again, the court defers to the agency's logical explanation.

e.     Court and Commission Proceedings

DOD withheld information that "contain discussions of detainee-related proceedings in federal court and military commissions."  *Id.* ¶ 33.  The withheld information "describ[es] detainees' health, behavior, and conditions in the context of these proceedings; logistical and operational issues related to the detainees and the facilities; and operational responses to proceedings and orders that touch on classified subject matter."  *Id.*  Once again, Plaintiffs' challenge to the withholding of this information questions the government's showing of resulting

national security harm from the release of this information. *See* Pls.' Reply at 17. And, again, the court rejects Plaintiffs' argument; it is more than logical and plausible that the sensitive nature of this information is such that its release could "permit[] the details of [the detainees'] detention to become widely known to hostile forces abroad that are still engaged with deployed forces." McCubbin Decl. ¶ 34.

f. <u>Congressional Matters</u>

Plaintiffs' final challenge to the government's section 1.4(a) withholdings involves redactions in Records 272 and 304 that "contain discussions of congressional matters related to JTF-GTMO operations." *Id.* ¶ 33. As with the redactions concerning discussions of court proceedings and commissions, the agency claims that disclosing this information would provide "those who seek to harm the United States with critical information regarding our operations, our policies—and how they change dependent on certain factors—and our vulnerabilities." *Id.* ¶ 34.

The court agrees with Plaintiffs that the agency's justification for withholding this information is plainly insufficient. Merely identifying information as "discussions of congressional matters related to JTF-GTMO operations" and asserting that its disclosure would harm the national security is inadequate, even under Exemption 1. *See Int'l Counsel Bureau*, 723 F. Supp. 2d at 60 ("[A] categorical description of redacted material coupled with categorical indication of anticipated consequences is clearly inadequate to support withholding records, even under exemption 1." (internal quotation marks omitted)). DOD does not indicate the nature of the "congressional matters" redacted from the records, nor describe what kind of "JTF-GTMO operations" they involve. As such, DOD has not "afford[ed] the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (internal

quotation marks omitted). If DOD wishes to withhold this information pursuant to Exemption 1, then it must provide more information to support that invocation.

2.     *Section 1.4(b) "Foreign Government Information"*

DOD withheld foreign government information from one record—Record 273—as classified pursuant to section 1.4(b) of EO 13,526. According to the agency's declaration, Record 273 "discusses a detainee movement operation that was postponed due to the receiving nation no longer being willing or able or both to accept the detainee." McCubbin Decl. ¶ 35. According to DOD, disclosure of this information "would negatively impact our ability to deal with foreign nations on sensitive matters" and "protect and advance U.S. national interests" because "[f]oreign governments would no longer trust us to deal with foreign nations on sensitive matters." *Id.*

The court agrees with Plaintiffs that DOD has failed to show that the information in Record 273 pertains to "foreign government information" within the meaning of section 1.4(b) of EO 13,526. The Executive Order defines "foreign government information," as relevant here, as "information provided to the United States Government by a foreign government . . . with the expectation that the information, the source of the information, or both, *are to be held in confidence*," or, conversely, "information produced by the United States Government pursuant to or as a result of a joint arrangement with a foreign government . . . requiring that the information . . . *be held in confidence*." EO 13,526 § 6.1(s) (emphases added). The agency's declaration fails to show that the redacted information in Record 273 was provided to the United States explicitly "to be held in confidence." *See id.*; *cf. Azmy*, 562 F. Supp. 2d at 600 (approving of government's invocation of Exemption 1 because "information by foreign governments is provided to JTF-GTMO in confidence, with the expectation that it will not be publicly released").

It is no doubt formalistic to require the government to confirm a fact that the court might reasonably infer, but the requirements of Exemption 1 are clear. The court will therefore grant the agency a subsequent opportunity to confirm that the redacted information was provided to JTF-GTMO by a foreign government in confidence.

3.      *Section 1.4(c) "Intelligence Activities, Sources, or Methods"*

DOD withheld information in 12 records pursuant to section 1.4(c), which allows classification of information that "pertains to . . . intelligence activities (including covert action), intelligence sources or methods, or cryptology." EO 13,526 § 1.4(c); *see* McCubbin Decl. ¶ 36. According to the agency's declaration, these records contain "information on intelligence activities that are vital to . . . detention operations," the release of which "could be reasonably expected to reveal intelligence sources and methods or otherwise compromise [DOD's] mission to collect intelligence." McCubbin Decl. ¶ 36.

Plaintiffs' objection to this withholding is two-fold. First, Plaintiffs argue that the government has not shown that the redacted records fall under section 1.4(c)'s protection. Pls.' Mem. at 33. Second, Plaintiffs assert that the government has also failed to establish the requisite risk of harm to national security that would result from disclosure of the redacted information. *Id.* at 34. In particular, Plaintiffs point to deficiencies in the agency's descriptions of Records 60, 168, and 186, asserting that the government has not shown how information about detention operations redacted from those records "pertains" to intelligence operations. *Cf.* McCubbin Decl. ¶ 36.

The court agrees with Plaintiffs and finds that the information supplied about the section 1.4(c) withholdings is insufficient. The information about the detention of enemy combatants at JTF-GTMO readily satisfies the "foreign component" requirement of classifiable "intelligence." *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 160 F. Supp. 3d 226,

234 (D.D.C. 2016) (explaining that "intelligence" as defined by section 6.1(x) of EO 13,526 "requires a foreign component"); *see also* Executive Order No. 12,333, 46 Fed. Reg. 59,941 (Dec. 4, 1981), § 3.4(a), (d) (defining "counterintelligence" and "foreign intelligence"). But without more information, the court cannot conclude that the information withheld involves intelligence "activities," "sources," or "methods." EO 13,526 § 1.4(c). For example, the agency describes Record 168 as involving an update from General Kelly regarding "communal and single-cell distribution, detainee activity that needs to be monitored, and the impetus behind . . . noncompliant activity." McCubbin Decl. ¶ 36. It is not clear how this information pertains to any intelligence activity, source, or method, nor how its disclosure would reasonably be expected to cause damage to the national security.

The court will therefore deny summary judgment to Defendant on this issue. As requested, the court will allow DOD to supplement its showing and address the information withheld under section 1.4(c) with a classified *ex parte* declaration for the court's *in camera* review. *See* Def.'s Mem. at 24 n.12; Def.'s Reply at 16 n.13.

4.      *Section 1.4(g) "Vulnerabilities or Capabilities . . . Relating to the National Security"*

Plaintiffs do not challenge DOD's withholdings under section 1.4(g) of EO 13,526, which protects information that "pertains to . . . vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security." *See* McCubbin Decl. ¶ 37 (explaining that Records 27, 55, 56, 75, 96, 105, 156, 189, and 194 include information withheld under section 1.4(g)). According to the agency, these records "discuss detainee movements to third countries, and, in particular, focus on the vulnerabilities of the mission due to possible changes in mission," including "threat assessments of airfields used to transport and transfer the detainees." *Id.* On the basis of the agency declaration, the court is satisfied that

the information was properly classified under section 1.4(g) and therefore grants summary judgment in favor of Defendant as to this issue.

### C. Exemption 3

Plaintiffs do not challenge DOD's withholding of information in Record 272 pursuant to Exemption 3. *See generally* Pls.' Mem. Exemption 3 permits the withholding of records that are "specifically exempted from disclosure by statute" if that statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3)(A)(i). According to the agency's declaration, the information redacted from Record 272 is "withheld under the specific authority of 10 U.S.C. § 130b," *see* McCubbin Decl. ¶ 39, which authorizes the withholding from disclosure to the public "personally identifying information regarding . . . any member of the armed forces assigned to an overseas unit, a sensitive unit, or a routinely deployable unit," 10 U.S.C. § 130b(a)(1). Specifically, the redacted information in Record 272 "specifically identif[ies] the names, office affiliations, contact information, and titles of covered personnel that are assigned to routinely deployable units." McCubbin Decl. ¶ 39. On the basis of the agency declaration, the court is satisfied that the information was properly redacted under Exemption 3 and therefore grants summary judgment in favor of Defendant as to these withholdings.

### D. Exemption 6

DOD invokes Exemption 6 to redact two categories of information. The first category involves identifying information of government personnel, including individuals below the rank of colonel or GS-15, *id.* ¶¶ 64, 66; the email addresses of all DOD personnel regardless of rank or position, *id.* ¶ 69; and "personally identifying information in the form of companies deployed to JTF-GTMO, personal characteristics of military personnel, and some descriptive information

about personnel actions," *id.* ¶ 67.  The second category pertains to detainee information—"names, numbers, and other identifying information in the context of discussing noncompliant behavior, medical care, detainee movements, and detainee communications."  *Id.* ¶ 70.[10]  Within these categories, Plaintiffs challenge only Defendant's withholding of "descriptive information about [DOD] personnel actions" and all detainee information.  *See* Pls.' Mem. at 34–38; Pls.' Reply at 19–22.

An agency may use Exemption 6 to withhold "personnel and medical files . . . the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Courts "pursue two lines of inquiry to determine whether [the agency] has sustained its burden to show that the information [sought] is properly withheld" under Exemption 6.  *Multi Ag Media LLC v. U.S. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008).  First, courts determine whether the information withheld is contained in "personnel, medical, or similar files covered by Exemption 6."  *Id.* (internal quotation marks omitted).  If so, courts "then determine whether . . . disclosure would constitute a clearly unwarranted invasion of personal privacy."  *Id.* (internal quotation marks omitted).  The second inquiry requires courts "to balance the privacy interest that would be compromised by disclosure against any public interest in the requested information."  *Id*.

There is no dispute that the documents at issue are "personnel and medical files" that satisfy the threshold requirement of Exemption 6.  Instead, Plaintiffs assert that these Exemption 6 withholdings are improper because, as to both categories of information: (1) the government has failed to establish that there are valid privacy interests in the redacted information, and (2) any

---

[10] Defendant also invoked Exemption 6 to withhold information related to third parties—including two court experts and visitors to Guantánamo—from certain documents.  *See* McCubbin Decl. ¶ 72.  Plaintiffs do not challenge those withholdings.  *Cf.* Pls.' Mem. at 35 & n.8.

existing privacy interests are not outweighed by the public's interest in the information. Neither argument is convincing.

### 1. Description of Personnel Actions

DOD redacted "descriptive information about personnel actions" from the records, asserting that the "privacy interest in this information . . . far outweighs any minimal interest the public could have in the information." *See* McCubbin Decl. ¶ 67. Plaintiffs counter that the government fails to explain how descriptions of personnel actions would necessarily identify specific personnel and thus give rise to any privacy interest that could outweigh the public's interest in the information. *See* Pls.' Reply at 19–20.

The balancing analysis for Exemption 6 requires a court to first determine "whether disclosure of the files would compromise a substantial, as opposed to *de minimis*, privacy interest." *Multi Ag Media LLC*, 515 F.3d at 1229 (internal quotation marks omitted). "A substantial privacy interest is anything greater than a *de minimis* privacy interest." *Id.* at 1229–30. Here, the court agrees with Defendant that disclosure of the withheld descriptions of personnel action "obviously" implicates an employee's substantial privacy interest in sensitive information regarding his or her employment. *See* Def.'s Reply at 31. The D.C. Circuit has recognized that "[a]n employee has at least a minimal privacy interest in his or her employment history and job performance evaluations." *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984). That privacy interest arises not only "from the presumed embarrassment or stigma wrought by negative disclosures," but also from "the employee's more general interest in the nondisclosure of diverse bits and pieces of information, both positive and negative, that the government, acting as an employer, has obtained and kept in the employee's personnel file." *Id.* Thus, "[c]ourts generally recognize the sensitivity of information contained in personnel-related files and have accorded protection to the personal

details of a federal employee's service." *Smith v. Dep't of Labor*, 798 F. Supp. 2d 274, 284–85

(D.D.C. 2011); *see Bloomgarden v. U.S. Dep't of Justice*, 874 F.3d 757, 760–62 (D.C. Cir. 2017)

(affirming Exemption 6 withholding of proposed termination letter sent to Assistant U.S. Attorney

("AUSA") because the AUSA's "quite substantial" privacy interest in avoiding embarrassment

caused by disclosure of a discipline letter containing allegations of unprofessionalism outweighed

the public's interest in learning about the AUSA disciplinary process). The court therefore agrees

with DOD that disclosing information about personnel actions taken by DOD as to the individual

targeted by those actions would constitute an unwarranted invasion of the employee's personal

privacy.

"Finding a substantial privacy interest does not conclude the inquiry," however. *Multi Ag

Media LLC*, 515 F.3d at 1230. The court must now "address the question whether the public

interest in disclosure outweighs the individual privacy concerns" in the withheld personnel

information. *Id.* (internal quotation marks omitted). "The only valid public interest in the FOIA

context is one that serves FOIA's core purpose of shedding light on an agency's performance of

its statutory duties." *Smith*, 798 F. Supp. 2d at 285 (citing *Reporters Comm.*, 489 U.S. at 773).

"The requester has the burden of demonstrating that public interest." *Id.* In this case, Plaintiffs

have not carried their burden. Plaintiffs assert that, because claims of sex discrimination against

female service members and allegations regarding "hazardous work environments" have arisen

from DOD's operation of JTF-GTMO, the public has an interest in "understanding . . . how the

government handles personnel actions." Pls.' Mem. at 38 (citing Pls.' Stmt. ¶ 53). But Plaintiff

has not shown that disclosure of this information would actually shed light on those unrelated

issues; therefore, any general interest in learning more about the manner in which personnel actions

are "handled" at JTF-GTMO does not overcome the privacy interest in the nondisclosure of

information kept in an employee's personnel file.  *Cf. Reporters Comm.*, 489 U.S. at 772 (explaining that "an invasion of privacy is warranted" under the private-public interest balancing test only if disclosure "open[s] agency action to the light of public scrutiny," not to serve "the purposes for which the request for information is made" (internal quotation marks and emphasis omitted)).

### 2. *Detainee Information*

The court likewise upholds DOD's withholding of detainee information pursuant to Exemption 6.  *See* McCubbin Decl. ¶ 70.  As the agency explains, "release of this information would constitute a clearly unwarranted invasion of [the detainees'] personal privacy, particularly with respect to medical information and identifying numbers that can be tied to detainee conduct and health."  *Id.* ¶ 71.

Plaintiffs' objection to these withholdings centers primarily on their assertion that the government "is redacting information similar in form to information that it has already released." Pls.' Mem. at 36.  In particular, Plaintiffs assert that DOD cannot invoke Exemption 6 as to: (1) detainee numbers—two of which the government released in this production, *see id.* at 36–37 (referring to Records 325 and 343, which identify detainees 768 and 128, respectively), and others online, *see* Pls.' Reply at 21–22 (citing *List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba, from January 2002 through May 15, 2006*, U.S. Dep't of Def., http://archive.defense.gov/news/May2006/d20060515%20List.pdf)—and (2) detainees' medical information, in light of the government's previous release of medical charts tracking hunger-striking detainees' weight, *see* Pls.' Mem. at 37 (citing Pls.' Stmt. ¶ 40).

As an initial matter, the court notes that, notwithstanding their detention, the detainees at Guantánamo Bay maintain a substantial privacy interest in their personally identifying

information.  *See Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 286–87 (2d Cir. 2009)

(concluding that Guantánamo detainees "have a measurable privacy interest in the nondisclosure

of their names and other identifying information"); *see also Mingo v. U.S. Dep't of Justice*, 793 F.

Supp. 2d 447, 455 (D.D.C. 2011) (recognizing privacy interest in medical records of prison

inmates).  This privacy interest is "significantly lessened," however, if the personally identifying

information has been released or is "'open and notorious.'"  *See Int'l Counsel Bureau*, 723 F. Supp.

2d at 66–67 (quoting *Hidalgo v. FBI*, 541 F. Supp. 2d 250, 255 (D.D.C. 2008)); *see also id.* (finding

Guantánamo detainees' privacy interest in photographs only "slight" because "the government

ha[d] already released a substantial amount of information about *these* detainees," including their

photographs (emphasis added)).  But the personally identifying detainee information redacted by

DOD in this case has not been released.  *E.g.*, Def.'s Reply at 33 ("D[O]D is not seeking to

withhold records that have already been made public.").  Accordingly, the court agrees with

Defendant that the public availability of certain detainee information—here, the detainee numbers

of two detainees, detainee numbers from 2002 through 2006, and a chart tracking detainee weight

during hunger strikes—does not lessen the privacy interest of the detainees as to the more general

medical information withheld here, nor mandate its disclosure.

     The court recognizes that there is significant public interest in the withheld information, as

disclosure of the information could assist the public in learning more about the government's

treatment and care of detainees at JTF-GTMO.  *See Int'l Counsel Bureau*, 723 F. Supp. 2d at 66

("The press has taken a substantial interest in the Guantánamo Bay detainees, and has reported

extensively on them and their condition."); *In re Guantanamo Bay Detainee Litig.*, 624 F. Supp.

2d 27, 37 (D.D.C. 2009) ("Public interest in Guantanamo Bay generally . . . has been

unwavering.").  Although it is a close call, on balance, the court concludes that the public's general

interest in obtaining information about the treatment of JTF-GTMO detainees does not outweigh the substantial privacy interests of the detainees in nondisclosure of their personally identifying information. *See Associated Press*, 554 F.3d at 290 (concluding that detainees' privacy interest in their names and identifying information in records regarding abuse allegations by military personnel outweighed the public's interest in using that information to determine whether those allegations affected the government's treatment of them). The court therefore concludes that detainee information is properly withheld under Exemption 6.

*   *   *

Having reviewed the agency's declaration as to the remaining categories of undisputed information withheld under Exemption 6, *see* McCubbin Decl. ¶¶ 64, 66, 69, 72, the court is satisfied that DOD has adequately shown that the disclosure of this information would constitute a clearly unwarranted invasion of personal privacy. The court therefore grants summary judgment in favor of DOD as to its Exemption 6 withholdings.

### E.    Exemption 7(E)

Next, the court addresses the government's invocation of Exemption 7(E) to redact information from four records: Records 257, 263, 270, and 291. McCubbin Decl. ¶ 76. According to McCubbin, the information redacted from these records relates to "security protocols, including detainee distribution among the camps, and protocols related to identifying and dealing with detainees who claim to be on hunger strike." *Id.* Plaintiffs challenge only DOD's redactions of information in Record 257. *See* Pls.' Mem. at 38.

Exemption 7(E) allows an agency to withhold information "compiled for law enforcement purposes" if its release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or

prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."
5 U.S.C. § 552(b)(7)(E). To properly invoke this exemption, the agency "must [also] show that
the records contain law-enforcement techniques and procedures that are generally unknown to the
public." *Elkins v. Fed. Aviation Admin.*, 134 F. Supp. 3d 1, 4 (D.D.C. 2015) (internal quotation
marks omitted).

Record 257 is a memorandum that compares Bureau of Prisons ("BOP") and DOD policies
for the management of hunger strikers and enteral feeders and "describes in minute detail the
procedures to be followed by guard personnel to confirm if a detainee is on hunger strike, and, if
so, the steps that need to be taken, including the specific techniques used for enteral feeding."
McCubbin Decl. ¶ 76. As a threshold matter, Plaintiffs do not dispute that these records have been
"compiled for law enforcement purposes." *Cf.* Pls.' Mem. at 38; McCubbin Decl. ¶ 75. Instead,
Plaintiffs assert that the redactions in Record 257 are inappropriate because DOD has not shown
that the withheld information constitutes techniques and procedures or guidelines used "for law
enforcement investigations or prosecutions" within the meaning of the statutory text. *See* Pls.'
Mem. at 39–40. In Plaintiffs' view, the "force-feeding procedures" used at JTF-GTMO bear no
relation to any law enforcement investigation or prosecution, and therefore cannot be withheld
under Exemption 7(E). *See id.* at 40–41.

Contrary to Plaintiffs' assertion, Exemption 7(E) has not been limited to "techniques and
procedures" or "guidelines" that directly relate to a particular investigation, prosecution, or crime.
Instead, courts have widely approved of agency's invocations of Exemption 7(E) to shield from
disclosure law enforcement techniques, procedures, or guidelines that, if disclosed, would raise
security concerns or render the withheld law enforcement techniques or guidelines ineffective.
*See, e.g.*, *Jimenez v. FBI*, 938 F. Supp. 21, 30 (D.D.C. 1996) (approving BOP's invocation of

Exemption 7(E) to withhold the gang validation criteria used by BOP to classify gang members because disclosure of the information "could enable inmates to circumvent detection as gang members" and "hamper the effectiveness of law enforcement officers"); *Jordan v. U.S. Dep't of Justice*, 668 F.3d 1188, 1201 (10th Cir. 2011) (approving BOP's invocation of Exemption 7(E) to redact portion of inmate's psychological records that advised all staff regarding appropriate actions to take with regard to the inmate—"a dangerous prisoner with a history of threatening staff with bodily harm"—because "knowing BOP strategy could make it easier for [the prisoner] to subvert it").

The recent case of *Pinson v. Department of Justice* is instructive on the applicability of Exemption 7(E) to the information redacted in Record 257. *See* 313 F. Supp. 3d 88 (D.D.C. 2018). In *Pinson*, BOP invoked Exemption 7(E) to withhold from disclosure, among other information, a "description of the Bureau's calculated use of force technique and a photo of the technique being used," as well as "recommendations for improving future uses of force and corrective measures to be taken for errors identified in the use of force under review." *Id.* at 116. The court agreed with BOP's assertion that releasing this information—which detailed "equipment to be used during the use of force technique, which staff members were to perform what role during the use of force, and steps to be taken if the inmate remained noncompliant"—would "allow inmates to target certain staff or equipment during a use of force or anticipate what steps staff would be taking based on their noncompliance, thus allowing circumvention and rendering the procedures ineffective." *Id.* at 117 (internal quotation marks omitted). The court therefore granted summary judgment to BOP as to its use of Exemption 7(E) to withhold this information. *See id.* at 118.

In this case, the information withheld from Record 257 details the manner in which guards are to engage in the "inherently contentious and confrontational process of enteral feeding" of JTF-

GTMO detainees.  Def.'s Reply at 36.  As in *Pinson*, the information redacted from Record 257

falls within Exemption 7(E)'s ambit because its disclosure would raise significant security

concerns for those guards implementing the enteral feeding procedures, thus rendering the "law

enforcement techniques and procedures" and "guidelines" spelled out in the document ineffective.

DOD has also sufficiently shown that the information in Record 257 is "not generally

known to the public" and that its disclosure would pose a reasonable risk of circumvention of the

law.[11]  Plaintiffs' arguments to the contrary are unavailing.  First, Plaintiffs suggest that because

BOP policies for managing hunger strikers and enteral feeders are available to the public, the

redacted information in Record 257 is effectively public as well because DOD's "hunger strike

policy and procedures mirrors those followed by [BOP] to the maximum extent possible."  Pls.'

Mem. at 41–42 (quoting Production Pt. 1 at Bates 257).  But the information withheld from Record

257 details the differences between BOP policy and the policy employed at JTF-GTMO, *see*

McCubbin Decl. ¶ 76; the policies and procedures in force at JTF-GTMO for hunger strikes and

enteral feeding thus are not publicly available.  Plaintiffs cannot seek disclosure of JTF-GTMO's

policies based on another agency's public disclosure of its policies.  *Cf. Mobley v. CIA*, 806 F.3d

568, 583 (D.C. Cir. 2015) ("Disclosure by one federal agency does not waive another agency's

right to assert a FOIA exemption.").  Second, the court readily credits DOD's explanation that

disclosure of information about the enteral feeding policy in place at JTF-GTMO could reasonably

be expected to "create a risk of circumvention," *see Pinson*, 313 F. Supp. 3d at 117, because

---

[11] The court assumes, without deciding, that Exemption 7(E)'s requirement that disclosure of the withheld information "could reasonably be expected to risk circumvention of the law" applies to "techniques and procedures for law enforcement investigations or prosecutions," as it does to "guidelines."  *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice,* 746 F.3d 1082, 1102 n.8 (D.C. Cir. 2014) (acknowledging, but declining to weigh in on, "disagreement" as to "whether the 'risk of circumvention' requirement applies to records containing 'techniques and procedures' or only to records containing 'guidelines'").  *But see Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010) ("The sentence structure of Exemption (b)(7)(E) indicates that the qualifying phrase ('if such disclosure could reasonably be expected to risk circumvention of the law') modifies only 'guidelines' and not 'techniques and procedures.'").

detainees' improved understanding of "how the guard force operates and government strategies for ensuring the security of detention operations . . . could be used to evade those protocols," McCubbin Decl. ¶ 77. *See Pinson*, 313 F. Supp. 3d at 117 (disclosing information about BOP use of force techniques "could reasonably be expected to create a risk of circumvention by revealing the techniques involved in the use of force and the effectiveness of such techniques, rendering them ineffective in future uses"); *see also Shapiro v. U.S. Dep't of Justice*, 893 F.3d 796, 800 (D.C. Cir. 2018) (explaining that to invoke Exemption 7(E), an agency "only needs to demonstrate logically how the release of the requested information might create a risk of circumvention of the law"—"a relatively low bar" (cleaned up)).

Accordingly, the court is satisfied that DOD has met its burden of providing a logical explanation of how disclosing the information withheld under Exemption 7(E)—including the information withheld from Records 263, 270, and 291—could present a risk of circumvention of the law. *See Shapiro*, 893 F.3d at 801. The court therefore grants summary judgment in favor of Defendant as to its Exemption 7(E) withholdings.

### F.        Segregability

Finally, the court turns to evaluate the segregability of the records produced to Plaintiffs. The court will address only Defendant's segregability determination as to the information that was properly withheld pursuant to section 1.4(g) of EO 13,526 and Exemptions 3, 6, and 7(E). *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) ("If the district court approves [a] withholding without . . . a finding [as to segregability], remand is required even if the requester did not raise the issue of segregability before the court."). The court will address DOD's

segregability determination with respect to the remaining withholdings, as necessary, after DOD is given an opportunity to supplement its declarations.

Because "[t]he focus of the FOIA is information, not documents, . . . an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). FOIA therefore requires that "[a]ny reasonably segregable portion of [the] record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). An agency must provide a "detailed justification" and not just make "conclusory statements" to support its segregability determination. *Mead Data Cent.*, 566 F.2d at 261. Agencies, however, "are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which can be overcome by contrary evidence produced by the requester. *Sussman*, 494 F.3d at 1117.

The court is satisfied that the agency has complied with its segregability responsibility as to the information withheld pursuant to section 1.4(g) of EO 13,526 and Exemptions 3, 6, and 7(E). The agency's declaration affirms that the pages produced to Plaintiffs "were reviewed line-by-line to identify information exempt from disclosure for which a discretionary waiver of exemption could be applied." McCubbin Decl. ¶ 78; *see also* Droz Decl. ¶ 8 (explaining that Records 189, 201, and 251 "were reviewed line-by-line to identify information exempt from disclosure" and that "[e]very effort was made to segregate releasable material from exempt material"). Indeed, the production itself is indicative of the line-by-line parsing accomplished by Defendant: nearly all of the responsive records produced to Plaintiffs are redacted only in part. *See Citizens for Responsibility & Ethics in Wash.*, 160 F. Supp. 3d at 245 (finding that agency met its segregability burden of proof by submitting detailed *Vaughn* index and agency affidavit that

affirmed "line-by-line segregability review" and because at least some of the responsive documents were released in part). Moreover, the court has reviewed *in camera* a sampling of the documents produced to Plaintiffs; that review resulted in no reason for the court to question whether DOD complied with its obligation to disclose reasonably segregable material. The court therefore concludes that DOD complied with its segregability responsibility as to the information withheld pursuant to section 1.4(g) of EO 13,526 and Exemptions 3, 6, and 7(E).

## V. CONCLUSION AND ORDER

For the reasons set forth above, the court grants in part and denies in part Defendant's Motion for Summary Judgment, ECF No. 18, and Plaintiffs' Motion for Summary Judgment, ECF No. 19.

1. Defendant's Motion is granted as to: (a) the adequacy of the search; (b) withholdings under Exemption 1, section 1.4(g) of Executive Order 13,526; (c) withholdings under Exemption 3; (d) withholdings under Exemption 6; and (e) withholdings under Exemption 7(E).

2. Defendant's Motion is denied as to: (a) withholdings under Exemption 5; and (b) withholdings under Exemption 1, section 1.4(a),[12] (b), (c) of Executive Order 13,526. Defendant shall supplement its declarations to address the deficiencies identified in this Memorandum Opinion and may also submit to the court a classified *ex parte* declaration to support its withholdings.

3. Plaintiffs' Motion is granted insofar as DOD has withheld officially acknowledged information as to: (a) the May 15, 2013 tally of hunger strikers and tube-fed detainees

---

[12] The court found, however, that the following categories of Exemption 1, section 1.4(a) withholdings were properly withheld: (1) records pertaining to detainee conduct, *infra* at IV.B.1.a; (2) records pertaining to "an order affecting female guards," *infra* at IV.B.1.d; and (3) records pertaining to detainee-related proceedings in federal court and military commissions, *infra* at IV.B.1.e.

at JTF-GTMO, and (b) the June 13, 2015 email describing a detainee transfer to Oman in Record 207, but is denied in all other respects.

The parties shall meet and confer and no later than October 10, 2018, propose a schedule for an additional round of summary judgment briefing.

Dated:  September 27, 2018

Amit P. Mehta
United States District Judge