# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CAROL ROSENBERG, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 17-cv-00437 (APM) |
| U.S. DEPARTMENT OF DEFENSE, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

This action arises from a Freedom of Information Act ("FOIA") request submitted by Plaintiffs Carol Rosenberg and Miami Herald Media Company to the United States Department of Defense ("DOD"). Plaintiffs seek the disclosure of emails sent by retired Marine Corps General John F. Kelly pertaining to the Joint Task Force Guantánamo ("JTF-GTMO"), a military task force based in Guantánamo Bay, Cuba. DOD initially refused Plaintiffs' request for expedited processing, and Plaintiffs filed the instant lawsuit on March 10, 2017. After an initial round of summary judgment briefing, the court found that DOD had not properly justified withholding certain responsive information under Exemptions 1 and 5 of FOIA. The parties' renewed cross-motions for summary judgment and Plaintiffs' motion for partial reconsideration are now before the court. For the reasons set forth below, the court grants in part and denies in part Defendant's Motion for Summary Judgment and grants in part and denies in part Plaintiffs' Cross-Motion for Summary Judgment and Partial Reconsideration.

## II.  BACKGROUND

### A.  Rosenberg's FOIA Request

For the better part of two decades, Plaintiff Rosenberg, a reporter for the Miami Herald, has reported extensively on the U.S. Southern Command ("SOUTHCOM")—a component of DOD responsible for American military operations in Central America, South America, and the Caribbean—including the Guantánamo Bay detention center.  Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 7, 10.  Rosenberg's reporting covered, among other things, General Kelly's career during the years he oversaw operations at Guantánamo.  *Id.*

Shortly after the 2016 presidential election, Rosenberg sent a FOIA request to DOD seeking: "[A]ll emails by the former [SOUTHCOM] commander retired Marine Gen. John F. Kelly to Lisa Monaco [the former Assistant to President Obama for Homeland Security and Counterterrorism] or those that also copied her on his correspondence."  Compl., Ex. A, ECF No. 1-1.  The DOD denied Rosenberg's request for expedited processing and did not respond to her administrative appeal.  *See* Compl. ¶¶ 12–20.

### B.  Procedural Background

After Plaintiffs filed this lawsuit on March 10, 2017, *see generally* Compl., DOD produced to Plaintiffs 256 emails and 92 attachments totaling 548 pages, and invoked FOIA Exemptions 1, 3, 5, 6, and 7(E) for various withholdings, *see* Third Joint Status Report, ECF No. 15, ¶¶ 3–4.  DOD filed a motion for summary judgment in October 2017, *see* Def.'s Mot. for Summ. J., ECF No. 18 [hereinafter Def.'s First Mot.].  The motion was supported by the declaration of Brigadier General Todd J. McCubbin, the Reserve Deputy Director of SOUTHCOM, *see id.*, Decl. of Todd J. McCubbin, ECF No. 18-2 [hereinafter McCubbin Decl.], as well as a *Vaughn* Index, *see id.*, Ex. 4 [hereinafter *Vaughn Index*].  Plaintiffs filed a cross-motion for summary judgment

the following month, *see* Pls.' Cross-Mot. for Summ. J., ECF No. 19, Mem. in Supp. of Cross-Mot., ECF No. 19-1 [hereinafter Pls.' First Mot.]. Plaintiffs also asked the court to conduct an *in camera* review of a representative sample of the documents at issue, *see id.* at 42–43, which the court agreed to do, *see* Minute Order, Aug. 22, 2018.[1] Briefing in the matter completed in January 2018, *see* Pls.' Reply in Further Supp. of Pls.' First Mot., ECF No. 24 [hereinafter Pls.' First Reply].

The court entered a Memorandum Opinion and Order on September 27, 2018, finding that DOD had appropriately invoked FOIA Exemptions 3, 6, and 7(e). *See* Mem. Op. & Order, ECF No. 27 [hereinafter Mem. Op.], 33–43. The court denied DOD's motion as to most Exemption 1 withholdings and all Exemption 5 withholdings, *see id.* at 9–33, as explained in greater detail below. The court afforded DOD an opportunity to provide supplemental declarations to support its withholdings under both exemptions. *Id.*

On November 21, 2018, DOD filed a renewed motion for summary judgment with respect to its Exemption 5 withholdings and certain Exemption 1 withholdings. *See* Def.'s Renewed Mot. for Summ. J., ECF No. 31, Mem. of P&A, ECF No. 31-1 [hereinafter Def.'s Renewed Mot.]. In support of its renewed motion, DOD submitted a supplemental declaration from John Mulkeen, a deputy stationed in the SOUTHCOM Office of Operations Directorate. *See id.*, Decl. of John Mulkeen, ECF No. 31-2 [hereinafter Mulkeen Decl.]. DOD also submitted *ex parte* a classified and sealed supplemental declaration. *See* Def.'s Renewed Mot. at 2–3. Plaintiffs filed a renewed cross-motion for summary judgment and a motion for partial reconsideration on January 4, 2019. *See* Pls.' Renewed Cross-Mot. for Summ. J. & Partial Recons., ECF No. 34, Mem. in Opp'n to

---

[1] The court reviewed *in camera* Records 31, 72, 129, 140, 168, 240, 248, 265, 278, 281, 288, 295, 297, 307, 317, 320, 321, 326, 328, 331, and 335.

Def.'s Renewed Mot. & in Supp. of Pls.' Renewed Cross-Mot., ECF No. 34-1 [hereinafter Pls.' Renewed Mot.].  Briefing concluded on March 8, 2019.  *See* Pls.' Reply in Supp. of Pls.' Renewed Mot., ECF No. 43 [hereinafter Pls.' Renewed Reply].

## III.    LEGAL STANDARD

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).  As a general matter, "[i]n FOIA cases, an agency defendant may be entitled to summary judgment if it can demonstrate that (1) no material facts are in dispute, (2) it has conducted an adequate search for responsive records, and (3) each responsive record that it has located has either been produced to the plaintiff, is unidentifiable, or is wholly exempt from disclosure." *Mattachine Soc'y of Wash., D.C. v. U.S. Dep't of Justice*, 267 F. Supp. 3d 218, 223 (D.D.C. 2017) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350–51 (D.C. Cir. 1983)).

If an agency invokes a FOIA exemption to withhold information, it must, by declaration or otherwise, "describe the [withheld] documents and the justifications for nondisclosure with reasonably specific detail" and "demonstrate that the information withheld logically falls within the claimed exemption." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).  "Ultimately, an agency's justification for invoking a FOIA exemption is

sufficient if it appears logical or plausible." *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (internal quotation marks omitted).

## IV.  DISCUSSION

The parties' remaining disputes center on the applicability of Exemptions 1[2] and 5.  The court addresses each in turn.

### A.  Exemption 1

FOIA Exemption 1 precludes disclosure of documents that are:  "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order[.]"  5 U.S.C. § 552(b)(1).  DOD invoked Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) ("EO 13,526")—the relevant Executive Order governing the classification of national security information—as the basis for its redaction of various records produced to Plaintiffs. *See* Def.'s Renewed Mot. at 5–6.  EO 13,526 provides that information may be classified if, among other things, the information "reasonably could be expected to result in damage to the national security."  EO 13,526 § 1.1(a).

DOD withheld information pertaining to four categories of information that EO 13,526 deems to be classified: (1) "military plans, weapons systems, or operations," *id.* § 1.4(a); (2) "foreign government information," *id.* § 1.4(b); (3) "intelligence sources or methods," *id.* § 1.4(c); and certain (4) "vulnerabilities or capabilities" relating to national security, *id.* § 1.4(g).

---

[2] The parties have conceded several outstanding issues with respect to Exemption 1.  First, DOD concedes that, with the exception of a detainee movement order number, it improperly withheld information pertaining to congressional matters from Records 272 and 304.  *See* Def.'s Renewed Mot. at 10; Mulkeen Decl. ¶¶ 8–9.  Plaintiffs do not challenge DOD's withholding of the detainee movement order number.  *See* Pls.' Renewed Mot. at 31 n.3.  Second, Plaintiffs now concede that DOD properly redacted information from Record 273 that was provided by a foreign government to the U.S. government with the expectation that it would not be publicly released.  *See id.* at 32 n.4.

DOD now renews its motion for summary judgment with respect to its withholdings under the two remaining disputed categories: (1) "military plans, weapons systems, or operations"; and (2) "intelligence sources or methods."

### 1. *Section 1.4(a): Military plans, weapon systems, or operations*

DOD withheld under EO 13,526 § 1.4(a) records concerning "operational details about JTF-GTMO, particularly detention operations." McCubbin Decl. ¶ 19. Only two subcategories of these records—records pertaining to detainee health and records regarding detainee movements—are still in dispute.

### a. Detainee Health

DOD withheld information pertaining to detainee health and hunger strikes, wherein General Kelly "discuss[es] in broad and specific terms detainees' mental, physical, and emotional health, as well as the measures . . . being developed or taken to ensure their wellbeing," McCubbin Decl. ¶ 23, and identifies "the number of hunger strikers" and "the impact . . . the strike is having on detainees' health," *id.* ¶ 26. In their initial motion for summary judgment, Plaintiffs sought release on the grounds that much of the information—including the number of hunger strikers— had been officially disclosed. *See* Mem. Op. at 21–22. Plaintiffs also argued that these official disclosures undermined the DOD's objections that the release of similar information reasonably could be expected to harm national security. *Id.* at 22.

In its earlier opinion, the court found that "Plaintiffs fail[ed] to show that any of the information identified has been disclosed in a manner that allows them to overcome the agency's invocation of Exemption 1," *id.* at 22, and "easily reject[ed] Plaintiffs' related assertion that the release of similar information to that withheld here somehow lessens the risk of harm to the national security resulting from disclosure of information relating to detainee health and the

controversial enteral feeding program," *id.* at 25.[3]  However, the court granted Plaintiffs' motion

for summary judgment as to a May 15, 2013 tally of hunger strikers and tube-fed detainees reported

on the Miami Herald website.  The court found that the figure was derived from the public

statement of JTF-GTMO spokesman Army Lt. Col. Samuel House and was "thus 'officially

acknowledged' such that DOD may not withhold the number of hunger strikers and force-fed

detainees for the date of May 15, 2013."  *Id.* at 23–24 n.9.[4]  Regarding the other figures reported

on the Miami Herald website, though, the court concluded that "Plaintiffs have failed to bring to

the court's attention the specific official disclosures that support each count in the tally," and

accordingly had "not met their burden to prove that these figures are 'official disclosures' that

overcome DOD's invocation of Exemption 1."  *Id.*

Plaintiffs now seek reconsideration of the court's earlier order on the basis that a new

declaration confirms the tallies reported in the Miami Herald were "obtained exclusively from

official government sources."  Pls.' Renewed Mot. at 38; *see also id.*, Decl. of Carol Rosenberg,

ECF No. 34-2 [hereinafter Rosenberg Decl.].  Plaintiffs argue that, like the May 15, 2013 tally,

"the number of hunger strikers and force-fed detainees at Guantánamo between March and

December 2, 2013, has been officially acknowledged and may not properly be withheld."  Pls.'

Renewed Mot. at 38.  The court agrees.

As a threshold matter, DOD contends that reconsideration is unwarranted because the new

"evidence . . . was available to Plaintiff[s] well in advance of the court's [September 2018] ruling."

---

[3] Though the court did not expressly grant Defendants' motion for summary judgment as to this information, that was the court's clear intent.
[4] Under FOIA, the government cannot withhold information that it has already officially acknowledged.  Information is officially acknowledged if:  "(1) the information requested [is] as specific as the information previously released; (2) the information requested . . . match[es] the information previously disclosed; and (3) the information requested . . . already ha[s] been made public through an official and documented disclosure."  *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 620–21 (D.C. Cir. 2011).

Def.'s Reply in Supp. of Summ J. & Mem. in Opp'n to Pls.' Renewed Mot., ECF No. 40 [hereinafter Def.'s Renewed Reply], at 11 (alterations in original) (quoting *Koch v. Clayton*, No. 12-cv-1934 (APM), 2017 WL 2389921, at *1 n.3 (D.D.C. June 1, 2017)). This issue is governed by Federal Rule of Civil Procedure 54(b), which provides that an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

Rule 54(b) "recognizes [the court's] inherent power to reconsider an interlocutory order 'as justice requires.'" *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22–23 (1st Cir. 1985) (Breyer, J.)). Because reconsideration of an interlocutory order does not implicate the same finality and judicial resource concerns as the reconsideration of a final order, the Rule 54(b) standard is "more flexible" than Rule 59(e), which governs the reconsideration of final judgments. *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015). While Rule 59(e) motions ordinarily cannot be used to "raise arguments or present evidence that could have been raised before the entry of judgment," *id.* (internal quotation marks omitted), Rule 54(b) contains no such "strict prohibition," *id.* at 26; *see also Pinson v. U.S. Dep't of Justice*, 396 F. Supp. 3d 66, 76 (D.D.C. 2019) (noting that "a trial court has more discretion in applying Rule 54(b) than it does under Rule[] 59(e)"). Thus, the court may grant a Rule 54(b) motion for reconsideration so long as there are "good reasons for doing so," *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 308 F. Supp. 3d 186, 193 (D.D.C. 2018) (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005)), such as where the court failed to consider "data[] that might reasonably be expected to alter the conclusion reached by the court," *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotation marks omitted), or where the movant presents new

information that "constitute[s] a change in the court's awareness of the circumstances," even though it "may not constitute a change in the actual facts of the case," *Judicial Watch v. U.S. Dep't of Army*, 466 F. Supp. 2d 112, 124 (D.D.C. 2006).

Reconsideration is warranted here. In their previous motion, Plaintiffs cited to a Miami Herald database that tracked the daily number of hunger strikers and instances of force-feeding between March and December 2013. Pls.' First Mot. at 26. In support of their argument that all these tallies were officially acknowledged, Plaintiffs identified—as a representative example—the March 13, 2013 tally, which was derived from a statement of an official DOD spokesperson. *See* Pls.' First Reply at 14. The court agreed that the May 13 tally was officially acknowledged, but it could not confirm whether the remaining tallies in the database were likewise officially disclosed. Mem. Op. at 24 n.9. Carol Rosenberg's new declaration confirms, and DOD does not dispute, that "[e]very single data point in [the database] was obtained directly from an official in the Department of Defense who was authorized to disclose publicly the number of hunger strikers and forced feedings." Rosenberg Decl. ¶ 14; *see also id.*, Exhibit C, ECF No. 34-5 [hereinafter Ex. C] (providing 218 email chains in which various DOD officials conveyed the current tally of hunger strikers and instances of force-feeding during the period from March 19, 2013 to December 2, 2013).

This additional information constitutes a "change in the court's awareness of the circumstances," *Judicial Watch*, 466 F. Supp. 2d at 124, which "might reasonably be expected to alter the conclusion reached by the court," *Singh*, 383 F. Supp. 2d at 101. The flexible threshold for interlocutory reconsideration is therefore satisfied. DOD would have the court deny reconsideration because Plaintiffs have not identified any "new evidence" that was not previously available to it, *see* Def.'s Renewed Reply at 10–13, but the court fails to see how "justice requires"

such a result. In their earlier briefing, Plaintiffs clearly intended to demonstrate that all of these records had been officially disclosed, and now they have provided concrete evidence demonstrating as much. Furthermore, denying reconsideration would seem particularly unjust given that the court has given DOD the opportunity to supplement the record with information that was likewise available to the agency during the previous round of briefing. Accordingly, the court grants Plaintiffs' motion for partial reconsideration.

On the merits, DOD contends that disclosure is unwarranted because Plaintiffs have not demonstrated that there is an exact match between the information requested and information that has been officially disclosed. *Id.* at 11–12; *see also Dongkuk Int'l, Inc. v. U.S. Dep't of Justice*, 202 F. Supp. 3d 18, 29 (D.D.C. 2016) (explaining that, to invoke the official acknowledgment exception, plaintiffs must show that "the information previously disclosed is as specific as, or matches, the information that they now demand"). That argument is easily disposed of. DOD has withheld these records on the grounds that they identify "the number of hunger strikers" and enteral feeders at Guantánamo Bay. *See* McCubbin Decl. ¶ 26. The majority of these records are dated between the spring and winter of 2013, *see Vaughn Index*—the same timeframe during which the government routinely disclosed official tallies of hunger strikes, *see* Rosenberg Decl. ¶¶ 4, 10; Ex. C. The court already found that DOD must disclose "the number of hunger strikers and force-fed detainees for the date of May 15, 2013," because the official disclosure of those tallies was as specific as, and matched the information Plaintiffs sought. *See* Mem. Op. at 24 n.9. The same is true of DOD's official disclosures as to all other tallies in this timeframe. *See* Pls.' Renewed Mot. at 38 (requesting disclosure of "the number of hunger strikers and force-fed detainees at Guantánamo between March and December 2, 2013"). Accordingly, DOD may not withhold

information pertaining to the number of hunger strikers and force-fed detainees at Guantánamo Bay between March 19, 2013, and December 2, 2013.

b.    Detainee Movements to Third Countries

DOD withheld information relating to detainees' movements to third countries, reasoning that release of this information could "enable interference in future or similar operations," and could inhibit the government's ability to continue cooperating with foreign governments in these operations. McCubbin Decl. ¶ 28. In its earlier opinion, the court denied DOD's motion for summary judgment as to one sub-category of information regarding detainee movements to third countries: documents detailing the "reactions of the detainees upon learning of their transfer." *See* Mem. Op. at 26. The court found that the connection between releasing this information and the risks to national security and international cooperation was "tenuous at best," but allowed DOD to submit a supplemental declaration indicating whether "the redacted information about the reactions of detainees is too intertwined with other withheld information" to be released. *Id.*

DOD has now submitted such a declaration, confirming that this information has been withheld not because it is itself classified, but because "it is too intertwined with other withheld information that is properly and currently classified." *See* Mulkeen Decl. ¶ 6. According to Deputy Mulkeen, "information detailing detainee reactions is part of a larger discussion regarding detainee movements" in each of the withheld records, and, "in many of these records, detainees' reactions are discussed within the context of how the news of their transfer is or could impact detainee operations as well as interagency discussions concerning tentative, planned or pending transfers." *Id.* ¶ 7. By way of example, Deputy Mulkeen states that in Record 331, "General Kelly, in three sentences, identifies a detainee, his nationality, when he was notified, when he is being transferred and to where he is being transferred, and the impact the news of his transfer could have

11

on detention operations." *Id.* Release of these details, Deputy Mulkeen opines, could "compromise future transfers." *Id.*

Plaintiffs counter that the Mulkeen declaration does not "adequately explain[]" why General Kelly's discussions of detainees' reactions cannot be segregated from classified information. Pls.' Renewed Mot. at 34. In addition, Plaintiffs argue that the withholdings in Record 331 do not appear to be representative of the DOD's other withholdings in this category, and that DOD should have provided "document-by-document" support for each of its withholdings. *Id.* At a minimum, Plaintiffs request that the court conduct an *in camera* review of the withheld documents to weigh the DOD's claim of non-segregability. *Id.*

The D.C. Circuit "has long recognized . . . that documents may be withheld," in part or in full, when nonexempt portions "are inextricably intertwined with exempt portions." *Juarez v. U.S. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)). However, "[a] blanket declaration that all facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 90 (D.D.C. 2009) (quoting *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F.Supp.2d 1, 19 (D.D.C. 2004)). To meet its burden, the government must show "with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated for this reason." *Juarez*, 518 F.3d at 61. The government is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," which can be overcome by contrary evidence produced by the plaintiff. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

DOD has satisfactorily demonstrated why the withheld information pertaining to detainees' reactions cannot be segregated from otherwise classified materials. Contrary to Plaintiffs'

contentions, the Mulkeen Declaration explains, with sufficient specificity, that this information cannot be segregated because it "is part of a larger discussion regarding detainee movements" and is generally discussed "within the context of how the news of their transfer is or could impact detainee operations" and future transfers. Mulkeen Decl. ¶¶ 6–7. Plaintiffs take issue with the fact that the declaration does not explain why DOD cannot redact "(a) the name of the detainee, (b) his nationality, (c) the date of his notification, (d) the date of his transfer, (e) the detainee's destination, and (f) the impact of the news on detention operations, while disclosing the detainee's reaction," Pls.' Renewed Mot. at 34, but to do so in such granular detail would require DOD to discuss the very information that Plaintiffs concede is properly classified. The government's burden is not so demanding.

In addition, based on the court's *in camera* review of Record 331, the court confirms that the information is indeed too intertwined with other properly classified information to be segregated. Plaintiffs question whether detainee reaction information in the other disputed records is similar in kind to Record 331, noting that the McCubbin Declaration does not specifically identify Record 331 as discussing the reaction of detainees upon learning of their transfer. *See* Pls.' Renewed Mot. at 34 (citing McCubbin Decl. ¶ 27). There is no reason to doubt the representativeness of Record 331, however. Both the McCubbin and Mulkeen Declarations identically characterize this category of information as discussing "the reactions of the detainees upon learning of their transfer." *Compare* McCubbin Decl. ¶ 27, *with* Mulkeen Decl. ¶ 6. The McCubbin Declaration's omission of Record 331 from this list thus appears to have been merely an oversight. Plaintiffs also challenge the government's alleged failure to "provide document-by-document support for each of its withholdings," *see* Pls.' Renewed Mot. at 34, but they overlook the fact that the DOD conducted a "line-by-line" segregability review, making "[e]very effort" to

13

"segregate releasable material from exempt material," McCubbin Decl. ¶¶ 78–79. Plaintiffs do not point to any contrary evidence sufficient to overcome the "presumption that [the government] complied with the obligation to disclose reasonably segregable material." *See Sussman*, 494 F.3d at 1117. Therefore, the court grants DOD's motion for summary judgment as to this category of information.

2.      *Section 1.4(c) "Intelligence Activities, Sources, or Methods"*

DOD withheld information in 12 records pursuant to section 1.4(c), which allows classification of information that "pertains to . . . intelligence activities (including covert action), intelligence sources or methods, or cryptology." EO 13,526 § 1.4(c); *see* McCubbin Decl. ¶ 36. The court originally denied summary judgment to DOD as to this category of information, noting that DOD's public declarations did not contain sufficient detail to permit the court to conclude "that the information withheld involves intelligence 'activities,' 'sources,' or 'methods,'" or that its release would "reasonably be expected to cause damage to the national security." Mem. Op. 32 (quoting EO 13,526 § 1.4(c)). The court allowed DOD an opportunity to submit a supplemental classified declaration for *ex parte*, *in camera* review. *Id.* DOD has now submitted the classified declaration of John Mulkeen for the court's review, which DOD contends, "describes each of the disputed records in greater detail, explains how each record pertains to intelligence activities, and explains the damage to national security from their release." Def.'s Renewed Mot. at 12.

As a threshold matter, Plaintiffs object to DOD's *ex parte* submission, noting that "it is not at all apparent why the government cannot provide some public version of its supplemental account." Pls.' Renewed Mot. at 35. Plaintiffs correctly observe that even when an agency appropriately submits a declaration *ex parte*, it is "still required to provide as much public explanation as it can without 'giving away the information it is trying to withhold.'" *Roth v. U.S.*

*Dep't of Justice*, 642 F.3d 1161, 1185 (D.C. Cir. 2011) (quoting *Lykins v. U.S. Dep't of Justice*, 725 F.2d 1455, 1464 (D.C. Cir. 1984)). However, Plaintiffs overlook that DOD has done just that. DOD already submitted an unclassified declaration on the public docket to explain the basis for its § 1.4(c) withholdings, *see* McCubbin Decl. ¶ 36. The court previously concluded that the McCubbin Declaration provided insufficient information for the court to evaluate the withholdings, and it provided DOD with the opportunity to submit a classified *ex parte* declaration. *See* Mem. Op. at 32. DOD has thus fulfilled its obligation to provide "as much public explanation as it can." *Roth*, 642 F.3d at 1185.

On the merits, Plaintiffs renew their contention that the withheld information is not properly classified, questioning both whether the withheld information "pertain[s] to 'intelligence activities' subject to classification under § 1.4(c)," and whether release of such information could reasonably be expected to cause serious damage to the national security. *See* Pls.' Renewed Mot. at 36. Based on its *in camera* review of Deputy Mulkeen's classified declaration, and the "deferential posture" the court must assume when evaluating an agency's withholding of classified information, *see Larson v. U.S. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009), the court rejects Plaintiffs' contentions. Deputy Mulkeen's declaration spells out, in significant detail, how the withheld information in each record pertains to intelligence activities, sources, or methods, and how release of that information would reasonably be expected to cause damage to the national security. Therefore, the court grants DOD's motion for summary judgment as to this category of information.

## B.     Exemption 5

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the

agency." 5 U.S.C. § 552(b)(5). Exemption 5 incorporates all the privileges that the government may claim when litigating against a private party, including the deliberative process privilege. *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015). The deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001). To qualify for the privilege, the withheld information must be "both pre-decisional and deliberative." *See Abtew*, 808 F.3d at 898. "A document is predecisional if it precedes, in temporal sequence, the decision to which it relates . . . [a]nd a document is deliberative if it is a part of the agency give-and-take— of the deliberative process—by which the decision itself is made." *Id.* at 898–99 (internal quotation marks and citations omitted). Because Exemption 5 is a discretionary exemption, an agency may withhold information—even if it falls within the four corners of the exemption—"only if . . . the agency reasonably foresees that disclosure would harm an interest protected by" an applicable FOIA exemption. *See* 5 U.S.C. § 552(a)(8)(A)(i)(I); S. Rep. No. 114-4, at 8 (2015) (noting that "[t]he foreseeable harm standard applies only to those FOIA exemptions under which discretionary disclosures can be made").

DOD withheld under Exemption 5 information from a number of records, but it only "perfunctorily state[d] that disclosure of all the withheld information—regardless of category or substance—'would jeopardize the free exchange of information between senior leaders within and outside of the [DOD].'" *See* Mem. Op. at 14 (quoting McCubbin Decl. ¶ 62). Because DOD had failed to "explain how a particular Exemption 5 withholding would harm the agency's deliberative process," the court denied DOD's motion for summary judgment as to this information. *Id.* at 12– 15. In lieu of granting summary judgment in favor of Plaintiffs on this issue, though, the court

granted DOD an opportunity to supplement the record with an explanation as to why its withholdings satisfy the "foreseeable harm standard." *Id.* at 14–15. DOD could take a "categorical approach—that is, group together like records," the court explained, "but in that case, it must explain the foreseeable harm of disclosure for each category." *Id.* at 12.

In addition, the court addressed Plaintiffs' challenge that DOD had "failed to identify the specific, predecisional deliberative process[es] to which certain of [its] withholdings relate." *Id.* at 16. The court conducted an *in camera* review of a sample of documents and "substantiated only one [of Plaintiffs' challenges]: the assertion that General Kelly's opinions about the merits of a judicial ruling are not properly withheld as predecisional deliberative process." *Id.* "In light of the sensitivity of these records," however, the court granted DOD a subsequent opportunity "to explain why the records fall within Exemption 5's ambit." *Id.* at 17.

The parties have now renewed their arguments with respect to the reasonable foreseeability of harms associated with release of these records and whether General Kelly's discussions of the judicial ruling properly fall within Exemption 5. The court addresses the two issues in reverse order.[5]

### 1. Whether General Kelly's Opinions Regarding the Commission Ruling Are Predecisional and Deliberative

"To gauge whether the deliberative-process privilege has been asserted appropriately, the government must explain, for each withheld record, at least, (1) what deliberative process is involved, (2) the role played by the documents in issue in the course of that process, and (3) the

---

[5] *See Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, No. CV 18-2901 (BAH), 2019 WL 7372663, at *4 (D.D.C. Dec. 31, 2019) (explaining that the applicability of the claimed exemption should ordinarily be considered "first, before turning to foreseeable harm," because "the grant of summary judgment is inappropriate to any party unless the court is assured the record justifies" the government's invocation of the exemption).

nature of the decisionmaking authority vested in the office or person issuing the disputed documents, and the positions in the chain of command of the parties to the documents." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, No. CV 18-2901 (BAH), 2019 WL 7372663, at *4 (D.D.C. Dec. 31, 2019) (cleaned up) (quoting *Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 147 (D.D.C. 2017)).

In this case, DOD redacted various records in which "General Kelly provides his opinions about" a military commission ruling barring female guards from touching certain detainees. McCubbin Decl. ¶ 54. After conducting an *in camera* review of certain of these records, the court "agree[d] with Plaintiffs that some of the withheld information involves General Kelly merely 'opining about the merits' of the military commission ruling in a manner that is not directed toward decision-making as to law or policy," which the court noted is not "subject to the deliberative process privilege." Mem. Op. at 16. The court also observed that DOD inconsistently withheld these records, leaving unredacted certain records documenting General Kelly's frustration with the slow progress of the military commission, yet redacting similar discussions in other records. *Id.*

In the government's new declaration, Deputy Mulkeen states that the records reflect General Kelly's consideration of "various options in relation to the military commission's temporary order." Mulkeen Decl. ¶ 12. Deputy Mulkeen acknowledges that DOD erroneously made inconsistent redactions of General Kelly's thoughts, but states that the DOD maintains that the remaining redactions should be upheld. *Id.* ¶ 14. In addition, Deputy Mulkeen states that although not every record in this category explicitly contemplates a course of action, all of the withheld records are part of that deliberative process. *Id.*

Plaintiffs find fault with Deputy Mulkeen's declaration for three reasons. First, they argue that the declaration "fails to explain how each document withheld by the government contributed

to the government's deliberations on how to respond to the ruling at issue." Pls.' Renewed Mot. at 30. That argument misses the mark. The declaration expressly states that the records reflect General Kelly "considering various options in relation to the military commission's temporary order, from how to address the effects of the ruling to using other means to overturn what General Kelly believed was not only wrong but also illegal." Mulkeen Decl. ¶ 12. While Deputy Mulkeen acknowledges that "not every Record explicitly considers a course of action," he clarifies that "*every* Record is part of General Kelly's decisionmaking process," and that General Kelly "repeatedly addressed the ruling in his updates because he strongly felt that this was an issue that needed to be addressed at the highest levels of U.S. Government." *Id.* at ¶ 14 (emphasis added). All of these withholdings are thus part of General Kelly's decisionmaking process on how to respond to the ruling.

Second, Plaintiffs argue that Deputy Mulkeen's declaration "fails to explain the nature of General Kelly's decisionmaking authority with respect to responding to the ruling at issue." Pls.' Renewed Mot. at 30. The declaration plainly states, however, that "[a]s the Combatant Commander responsible for detention operations aboard JTF-GTMO, General Kelly was considering various options in relation to the military commission's temporary order." Mulkeen Decl. ¶ 12. The McCubbin Declaration provides additional detail, listing the recipients of General Kelly's emails by name and station, and explaining that the general's "emails to this broad group reflect that a large number of senior officials were involved in setting policy at JTF-GTMO at various levels." *See* McCubbin Decl. ¶ 41. DOD's explanation is more than adequate.

Third, Plaintiffs reiterate their earlier argument that many of the redactions "merely redact passages in which General Kelly opines on the merits of the ruling." Pls.' Renewed Mot. at 30. While it is true that this information alone is not subject to the deliberative process privilege, *see*

Mem. Op. at 16, the Mulkeen Declaration confirms that General Kelly was not just "opining or reflecting" on the ruling, *see* Mulkeen Decl. ¶ 12. Rather, his opinions were part of a broader deliberative process in which he was "was considering various options in relation to the military commission's temporary order." *Id.* The court has reviewed *in camera* a sample of these records,[6] and agrees that each record conveys information bearing on the agency's decisionmaking process. For instance, in various records, General Kelly shares his concerns about the order's effect on troop morale, and provides his views on the merits of the order in the context of his recommendations about how to implement and respond to the order. The court is especially cautious about exposing these deliberations to the light of day given the sensitive issues of military command and control they involve. General Kelly's discussions about the merits of the ruling— understood in their broader context as part of the agency's deliberations—are therefore subject to the deliberative process privilege. *See Dudman Commc'ns Corp. v. U.S. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987) ("Congress enacted Exemption 5 to protect the executive's deliberative processes—not to protect specific materials.").

Accordingly, the information "plausibl[y]" qualifies under Exemption 5, *Judicial Watch*, 715 F.3d at 941, and may be withheld so long as the agency has demonstrated its release is anticipated to cause reasonably foreseeable harm to an exemption-protected interest.

> 2.     *Satisfaction of the FOIA Improvement Act's "Foreseeable Harm" Standard*

Enacted in 2016, the FOIA Improvement Act, *see* Pub. L. No. 114-185, 130 Stat. 538, provides that an agency may withhold information pursuant to a discretionary FOIA exemption "only if . . . the agency reasonably foresees that disclosure would harm an interest protected by [one of the nine FOIA] exemption[s]," 5 U.S.C. § 552(a)(8)(A)(i)(I). To satisfy this "heightened"

---

[6] The court reviewed Records 281, 295, 320, 321, and 335.

foreseeable harm standard, *Judicial Watch, Inc. v. U.S. Dep't of Commerce* (*Judicial Watch I*), 375 F. Supp. 3d 93, 100 (D.D.C. 2019), an agency must "identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials" and "connect the harms in a meaningful way to the information withheld." *Ctr. for Investigative Reporting*, 2019 WL 7372663, at *9 (cleaned up) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Justice* (*Judicial Watch II*), No. CV 17-0832 (CKK), 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019)). "[G]eneric, across-the-board articulations of harm that largely repeat statements already found in the *Vaughn Index*," *id.* at *9 (internal quotation marks and citation omitted), and "boilerplate," "nebulous articulations of harm are insufficient," *Judicial Watch II,* 2019 WL 4644029, at *5. Rather, the agency must provide "context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *Ctr. for Investigative Reporting*, 2019 WL 7372663, at *10 (quoting *Judicial Watch II,* 2019 WL 4644029, at *5). In doing so, an agency "may take a categorical approach" and "group together like records . . . but in that case, it must explain the foreseeable harm of disclosure for each category." Mem. Op. at 12.

The degree of detail necessary to substantiate a claim of foreseeable harm is context-specific. In some instances, the withheld information may be so obviously sensitive—such as the disclosure of internal deliberations between a high-ranking military commander and senior government officials about a new detention operation in the United States—that a simple statement illustrating why the privilege applies and identifying the harm likely to result from release "may be enough." *Ctr. for Investigative Reporting*, 2019 WL 7372663, at *10 (citing Mem. Op. at 14). In other instances—such as where the withheld deliberations involve more mundane, quotidian matters or the decision has already been made—more explanation may be necessary. *See id.*

(holding that it was not "axiomatic" that the disclosure of discussions involving the selection of contractors would cause foreseeable harm, since the successful bidder "ha[d] already been selected and the bids awarded"); *see also* Mem. Op. at 14 (writing that, "absent more detail from the agency, the court can less readily agree with the notion that disclosure of . . . seemingly more benign . . . categories of withheld deliberative information," such as "opinions about the current state of facilities on base and recommendations and advice about maintenance issues, would reasonably result in the same level of harm to the exemption-protected interest" (internal quotation marks and citation omitted); *see also* S. REP. NO. 114-4, at 8 (explaining that the foreseeability of harm from disclosure will turn on the "age, content, and character" of the document in question).[7]

Here, DOD has submitted the declaration of Deputy Mulkeen, which explains why, in the agency's opinion, release of the information withheld under Exemption 5 would cause reasonably foreseeable harm to the interests protected by Exemption 5. Consistent with the court's earlier invitation, DOD has subdivided its supplemental discussion into the following eight categories.

a.    Detention Operations

DOD's first Exemption 5 category consists of "predecisional, deliberative discussions of detention operations, specifically with respect to detainee conduct and the policies and actions necessary to maintain security at JTF-GTMO." Def.'s Renewed Mot. at 16; *see also* McCubbin

---

[7] Plaintiffs appear to propose a more demanding standard. For every withholding, they suggest the government must "meaningfully address" each of eight factors identified in a 1994 Department of Justice guidance document. *See* Pls.' Renewed Mot. at 18; *see also* Pls.' Cross-Mot. for Summ. J., ECF No. 19, Ex. U to Langford Decl., ECF No. 19-4 (citing U.S. Dep't of Justice, OIP Guidance: Applying the "Foreseeable Harm" Standard Under Exemption 5, FOIA Update, Vol. XV, No. 2 (Jan. 1, 1994) (hereinafter "OIP Guidance")). Those factors include: (1) the nature of the decision involved; (2) the nature of the decisionmaking process; (3) the status of the decision; (4) the status of the personnel involved; (5) the potential for process impairment; (6) the significance of any process impairment; (7) the age of information; and (8) the sensitivity of any individual record portions. *See* OIP Guidance. It is true that, depending on the circumstances, some or all of these factors may be relevant in making the context-specific determination that the release of withheld information is likely to cause harm to an exemption-protected interest. There is no basis in FOIA's text or case law, however, to require an agency to mechanically recite each factor in order to meet its heightened burden under the FOIA Improvement Act.

Decl. ¶¶ 43–47. In these records, "General Kelly discusses various operational issues at JTF-GTMO with senior Executive Branch officials," and provides "his opinions, views, and recommendations as part of continuous consultation with leadership about operational management." Mulkeen Decl. ¶ 16. According to Deputy Mulkeen, disclosure of this information "would result in reasonably foreseeable harm to the agency's deliberative process by revealing the back-and-forth consultation process about non-final operational management decisions." *Id.* Such revelations would likely "inhibit[] officials from" engaging in "frank discussions about the[se] issues and exploring alternatives going forward," which, in turn, would make it "less likely" for senior leadership "to gain the full and necessary understanding" of these issues and would "hamper agency decision-making about [these] crucial military operational issues." *Id.* ¶¶ 16–17. In addition, disclosure of these discussions risks "providing the public with an erroneous understanding of agency decision-making at JTF-GTMO, revealing only a part of the overall considerations that play a role in the deliberative process for making policy about agency operations." *Id.* ¶ 17.

Deputy Mulkeen's explanation provides more than adequate detail and context to satisfy the agency's heightened burden. *See Nat. Res. Def. Council v. EPA*, No. 17-CV-5928 (JMF), 2019 WL 4142725, at *5 (S.D.N.Y. Aug. 30, 2019) (finding that the foreseeable-harm requirement was satisfied where an agency gave "context for the decisionmaking processes in question and the harms that would reasonably ensue from disclosure of the material"). Plaintiffs concede that release of some of this information "might potentially suggest some foreseeable harm," but they contend that the "great variety of different operational issues [DOD] has lumped together" do not "all present the same reasonably foreseeable harm." Pls.' Renewed Mot. at 17–18. For instance, Plaintiffs stress that certain records in this category also include matters seemingly unrelated to

detention operations, such as General Kelly's updates to senior officials "'about detainee . . . movements." *Id.* at 17 (quoting McCubbin Decl. ¶ 45). These discussions, Plaintiffs argue, do not "pose any reasonably foreseeable harm of hampering future deliberations on 'crucial military *operational* issues.'" *Id.* at 18 (quoting Mulkeen Decl. ¶ 17) (emphasis added). All this shows, however, is that the withheld records often involve multiple, overlapping categories of information. *Compare, e.g.*, McCubbin Decl. ¶ 44 (identifying Record 149 as including "wide-ranging discussions about detention operations at Guantánamo Bay"), *with id.* ¶ 50 (listing Record 149 in the category of Detainee Movements). An agency taking a categorical approach does indeed have an obligation to "group together *like* records," so that the court can be sure that the records in that category all present similar risks of harm to an exemption-protected interest, *see* Mem. Op. at 12 (emphasis added), but there is no reason a record cannot fall into multiple categories.

Separately, Plaintiffs contend that disclosure of these records would not cause the harm DOD anticipates because the underlying decisions were "likely made years ago." Pls.' Renewed Mot. at 18. Plaintiffs lose sight of the fact that these are communications among the highest levels of leadership at DOD and the White House about highly sensitive operational issues at Guantánamo. Given the sensitivity of this information, the court can readily see how its release would prospectively harm agency decisionmaking, notwithstanding the fact that the records are now more than six years old.

b.    Detainee Health

Second, DOD withheld privileged discussions pertaining to detainee health. *See* McCubbin Decl. ¶¶ 48–49. In these records, "General Kelly consults with senior Executive Branch officials and provides his views and recommendations about appropriate next steps with respect to detainees' mental, physical, and emotional health." Mulkeen Decl. ¶ 18. According to Deputy

Mulkeen, disclosure of this information "would harm the agency's deliberative decision-making process by prematurely revealing the details of the consultative process on sensitive issues like detainee health and enteral feeding, thereby inhibiting the Commander of SOUTHCOM from engaging in open and frank discussions about vital issues related to detainees' health and well-being." *Id.* Deputy Mulkeen elaborates that because senior officials require the "unguarded views and recommendations of military leadership" to make "informed decisions about questions related to detainee health," release of this information and its attendant chilling effect is likely to result in "less informed and poorer quality decisions" about these issues. *Id.*

Plaintiffs raise similar challenges with respect to this category of information, questioning both its age and whether all of the documents withheld in this category would implicate the types of harms identified in Deputy Mulkeen's declaration. *See* Pls.' Renewed Mot. at 19–20. Once again, the court rejects these challenges. The withheld information touches on highly sensitive areas, which outweighs its relative age, and Plaintiffs have not identified any records that do not implicate the harms discussed by Deputy Mulkeen. DOD has met its burden as to this category.

c.   Detainee Movements

Third, DOD withheld deliberations pertaining to detainee movements. *See* McCubbin Decl. ¶ 50. In these records, "General Kelly advises senior Executive Branch officials about logistical and operational issues related to detainee movement orders and provides his views about how to proceed, including with respect to media engagement." Mulkeen Decl. ¶ 19. According to Deputy Mulkeen, disclosure of this information is reasonably expected to "harm the quality of agency decisionmaking" by discouraging officials from "providing the fullest possible picture about the issues at stake." *Id.* Deputy Mulkeen explains that officials would be more guarded if this information were subject to public disclosure because, for instance, "commentary on

cooperation with a foreign government or an operational issue that should be shared with senior officials might be harmful if shared more widely." *Id.* When managing detainee movements, Deputy Mulkeen elaborates, "weighing options and commenting on any potential difficulties is crucial to arriving at proper conclusions about how to implement detainee movements," and disclosure of this information and its correspondent chilling effect would risk diminishing the free flow of information necessary to this process. *Id.*

Echoing a familiar theme, Plaintiffs contend that the harms Deputy Mulkeen has identified do not uniformly apply to the full universe of records included in the Detainee Movement category, and they question whether the release would be harmful given the age of the records and the relatively discrete issues they concern. *See* Pls.' Renewed Mot. at 21–22. Once again, the court rejects Plaintiffs' challenges. There is no indication that release of any of these documents would not implicate the harms identified by Deputy Mulkeen, and the sensitivity of their subject matter outweighs any factors that might mitigate the harm stemming from their release. DOD has therefore met its burden with respect to the information in this category.

### d. Detainee Communication Policies

DOD's fourth category consists of records pertaining to detainee communication policies. McCubbin Decl. ¶ 51. "In these records, General Kelly provides opinions about detainee communications policies, discusses possible changes to those policies, and solicits input from senior government officials." Mulkeen Decl. ¶ 20. As Deputy Mulkeen describes it, "disclosure of these records would reasonably be expected to harm the agency's decision-making on this important policy issue" because officials would be "less open in discussing [their] views, opinions, and recommendations with the knowledge that that deliberative discourse will be released to the public." *Id*. This, in turn, would reasonably be expected to result in poorer quality decisions.

"For example," Deputy Mulkeen explains, "if officials are discouraged from freely presenting their views about potential problems with a detainee communications policy, it is less likely that any such problems will be addressed, resulting in an entrenchment of a current policy." *Id.* Plaintiffs repeat the same counterarguments, *see* Pls.' Renewed Mot. at 24, and the court rejects them for the reasons discussed above. Deputy Mulkeen's explanation satisfies the foreseeable harm standard.

> e.     <u>Facilities Management</u>

The court finds otherwise with respect to DOD's fifth category of records. This category consists of General Kelly's "opinions and recommendations about the facilities on base and various maintenance issues." Mulkeen Decl. ¶ 21; *see also* McCubbin Decl. ¶ 52. The DOD suggests that disclosure of this information could cause "injury to the agency's decision-making" by chilling officials' willingness to discuss maintenance and facilities issues. Mulkeen Decl. ¶ 21. Unlike the other categories, however, Deputy Mulkeen fails to connect the harm in a "meaningful way to the information withheld." *Ctr. for Investigative Reporting*, 2019 WL 7372663, at *9 (internal quotation marks omitted). For instance, Deputy Mulkeen hypothesizes that "[i]f a particular structure were in poor shape, . . . the Commander of SOUTHCOM must be free to relate his candid views about the need for maintenance in order to keep senior officials properly informed and solicit their views in order to determine the proper course of action and ensure that appropriate resources are devoted to addressing those issues." Mulkeen Decl. ¶ 21. But Deputy Mulkeen nowhere explains why disclosure of this seemingly humdrum information is "likely"—as opposed to merely conceivable—to make the SOUTHCOM commander feel less free to convey his views on these matters in the future. *See Judicial Watch I*, 375 F. Supp. 3d at 101 ("The question is not whether disclosure could chill speech, but rather if it is reasonably foreseeable that it will chill

speech and, if so, what is the link between this harm and the specific information contained in the material withheld"). Because DOD has failed to specifically explain how disclosure of this category of Exemption 5 information will cause reasonably foreseeable harm to the agency's decisionmaking process, the court grants Plaintiffs' motion for summary judgment as to this category of information.

### f. Personnel Management

The court grants DOD's motion for summary judgment with respect to its sixth category of records—documents pertaining to personnel management. *See* McCubbin Decl. ¶¶ 53–54. In these records, "General Kelly discusses his opinions about the performance of personnel, pending personnel actions, and equal opportunity issues, as well as recommendations for how to handle ongoing personnel issues." Mulkeen Decl. ¶ 22. According to Deputy Mulkeen, these records "involve frank discussions of personnel performance and problems that are conveyed to those personnel only when final." *Id.* "[I]f those discussions are subject to public disclosure and thus available to the personnel under discussion," Deputy Mulkeen explains, "a manager will be much less likely to openly discuss [similar] performance issues and sensitive personnel matters" in the future. *Id.* Disclosure will consequently harm agency decisionmaking on personnel issues by causing senior decision-makers to be "less informed." *Id.* Additionally, disclosure could "lead to confusion about the actual reasons and rationales for personnel actions through the release of agency discussions that may not be the ultimate grounds for action." *Id.*

Deputy Mulkeen's declaration adequately identifies the harms that are reasonably foreseeable to result from disclosure of this category of information. Plaintiffs protest that any harm that could come from release of this information is already mitigated by the DOD's withholding of the names of specific personnel and their personally identifying information under

28

Exemption 6, *see* Pls.' Renewed Mot. at 25, but they incorrectly conflate the interests protected by Exemption 6 with those protected by Exemption 5. Whereas Exemption 6 protects individuals' privacy interests, Exemption 5 protects the government's deliberative processes. It is not difficult to see how managers at Guantánamo will be less likely to provide their frank views of personnel management issues if that information is released to the public (an Exemption 5 protected interest), even if the personally identifiable information in those discussions is withheld under Exemption 6. DOD has therefore met its burden as to this category.

g.      Court and Commission Proceedings

The government's seventh category includes "deliberative discussions of how to respond to a court or commission ruling or preparations for an anticipated court or commission ruling." Mulkeen Decl. ¶ 23; *see also* McCubbin Decl. ¶¶ 55–56. Deputy Mulkeen identifies two harms that are reasonably foreseeable to result from disclosure of this information. First, "[b]ecause the presentation of an agency's position at a hearing or in a filing is the final result of a deliberative decision-making process, disclosure of some of the discussions leading up to that final statement of a position would lead to confusion about the reasons and rationales supporting the agency's position." Mulkeen Decl. ¶ 23. Second, disclosure would likely cause officials to be concerned about "public scrutiny" over their deliberations and therefore would "unduly constrict[]" discussions among officials about how to respond to court orders. *Id.* This, in turn, would "harm the agency's ability to implement a court or commission ruling" in the future. *Id.*

Deputy Mulkeen's declaration satisfactorily identifies the harms the agency reasonably foresees will result from disclosure of this category of information. Apart from largely duplicative arguments that the court has already rejected, Plaintiffs offer only one counterargument. Because DOD "has not invoked the attorney-client privilege or work-product privileges that would seem to

more naturally capture records implicating the sort of litigation harm identified" by Deputy Mulkeen, Plaintiffs argue, "the government's concern about harm to deliberations about an agency's position in pending litigation does not appear to be presented here." Pls.' Renewed Mot. at 26. That argument is easily rejected. The deliberative-process privilege is a separate privilege from the attorney-client and work-product privileges, and the release of deliberative discussions may harm an agency's deliberative process regardless of whether the information is also protected by these other privileges. *See Hall & Assocs. LLC v. U.S. Envtl. Prot. Agency*, 315 F. Supp. 3d 519, 532 (D.D.C. 2018) (discussing the distinct interests the two privileges are designed to protect). The court therefore grants DOD's motion for summary judgment as to this category.

h. Other Issues

The government's final category is a catch-all for various types of deliberations "that arise less frequently in General Kelly's correspondence and weekly updates." Def.'s Renewed Mot. at 22. This category includes (1) General Kelly's deliberative discussions about visits to Guantánamo Bay by congressional leaders and others, Mulkeen Decl. ¶ 24; (2) deliberative discussions of media coverage and media engagement, *id.* ¶ 25; (3) deliberative discussions of issues related to interactions with the International Committee of the Red Cross, *id.* ¶ 26; (4) a point-by-point commentary on a letter from Senator Feinstein about hunger strikes and enteral feeding, *id.* ¶ 27; (5) General Kelly's opinions on the usefulness of advisory documents pertaining to the enteral feeding program at Guantánamo Bay, which are provided to senior officials to help them inform their views of the documents, *id.* ¶ 28; *see also* Pls.' Cross-Mot. for Summ. J., ECF No. 19, Ex. PP-1 to Langford Decl., ECF No. 19-5, at 18; (6) a deliberative discussion of a response to a congressional letter, Mulkeen Decl. ¶ 28; (7) General Kelly's advice

and recommendations on an issue raised by a senior official, *id.*; and, finally, (8) General Kelly's opinions about congressional oversight, *id.*; *see also* McCubbin Decl. ¶¶ 57–61.

With the exception of Record 199, the court finds that DOD has satisfied the foreseeable harm standard as to these records. In his declaration, Deputy Mulkeen details how the release of each of these sub-categories of information is likely to cause harm to the agency's deliberative processes. For instance, regarding the visits to Guantánamo Bay, Deputy Mulkeen explains that the "potential for public scrutiny and disclosure of th[e]se discussions" would reasonably be expected to "discourage[] senior officials like the Commander of SOUTHCOM from frankly discussing issues related to those visits," thereby harming "the agency's ability to engage in fully informed discussion[s]" of these issues going forward. Mulkeen Decl. ¶ 24. Deputy Mulkeen provides similar levels of detail with respect to each of these categories. Plaintiffs repeat the same objections to these categories, and the court rejects them for the reasons already discussed. Accordingly, the court finds that DOD has met its burden as to these records.

DOD has not carried its burden as to Record 199, however. The agency's declarations simply provide too little detail on the information withheld in this record, stating only that "Record 199 contains General Kelly's opinion on an issue raised by a senior official," McCubbin Decl. ¶ 61; *see also* Mulkeen Decl. ¶ 28 (same). Deputy Mulkeen asserts that "[t]he Commander of SOUTHCOM must be free to convey his frank and unguarded opinion when responding to issues presented by senior officials in order to ensure that those senior officials have the appropriate information and advice when making decisions about JTF-GTMO," Mulkeen Decl., ¶ 28, but he never asserts that release of the information contained in Record 199 is likely to chill these sorts of communications or otherwise harm the agency's decisionmaking process. Because DOD has provided too little information as to the subject matter of the information withheld from Record

199 and has failed to connect "in a meaningful way" the harm stemming from its release to the information withheld, *Ctr. for Investigative Reporting*, 2019 WL 7372663, at *9, the court grants Plaintiffs' motion as to this information.

### C.     Segregability

Finally, the court considers the segregability of the remaining information DOD properly withheld pursuant to Exemptions 1 and 5. *See Sussman*, 494 F.3d at 1116 (stating that the district court must consider the segregability of the information withheld "even if the requester did not raise the issue of segregability before the court"). Plaintiffs have not identified any reason to doubt DOD's statement that it has reviewed the withheld records "line-by-line to identify information exempt from disclosure for which a discretionary waiver of exemption could be applied," making "[e]very effort" to "segregate releasable material from exempt material," McCubbin Decl. ¶¶ 78–79; nor has the court's *in camera* review identified any reason to question DOD's attestation. Accordingly, the court is satisfied that the agency has complied with its segregability responsibility as to this information. *See Sussman*, 494 F.3d at 1117 (noting that agencies are "are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material").

## V.     CONCLUSION AND ORDER

For the reasons set forth above, the court grants in part and denies in part Defendant's Motion for Summary Judgment, ECF No. 31, and grants in part and denies in part Plaintiffs' Motion for Summary Judgment and Partial Reconsideration, ECF No. 34.

1.     As to the information pertaining to congressional matters in Records 272 and 304. Plaintiffs' Motion for Summary Judgment is granted as conceded, with the exception of the detainee movement order number.

2.     As to the foreign government information in Record 273, DOD's Motion for Summary Judgment is granted as conceded.

3.     As to DOD's withholding under FOIA Exemption 1 and EO 13,526 § 1.4(a), Plaintiffs' Motion for Summary Judgment and Partial Reconsideration is granted as to the officially acknowledged tallies of hunger strikers and force-fed detainees at Guantánamo Bay between March 19, 2013, and December 2, 2013. Defendant's Motion is granted as to the information relating to the reaction of the detainees upon learning of their transfer, which is inextricably intertwined with otherwise classified information.

4.     Defendant's Motion is granted as to all other withholdings under FOIA Exemption 1 and EO 13,526 § 1.4(c).

5.     As to Exemption 5, Defendant's Motion is granted as to all categories of information except the Facilities Management category and Record 199. Plaintiffs' Motion is granted as to these categories of information.

The parties are directed to meet and confer and file a Joint Status Report by March 12, 2020, which updates the court on whether any further litigation is required on records not provided as samples for the court's *in camera* review, and, if so, proposes a schedule for further proceedings in this matter.

Dated:  March 5, 2020

_____
Amit P. Mehta
United States District Court Judge